**BENNET v. MURPHY et al.**

District Court, S. D. New York.
Sept. 14, 1932.

Hunt, Hill & Betts, of New York City (Robert McLeod Jackson and James E. Bennet, Jr., both of New York City, of counsel), for plaintiff.

Virgil B. Van Wagonen, of Kingston, N. Y. (MacDonald De Witt and C. Coudert Nast, both of New York City, of counsel), for defendant State of New York Nat. Bank.

Robert J. Howard, of New York City, for defendant Rondout Nat. Bank of Kingston, N. Y.

FRANK J. COLEMAN, District Judge.

In this suit by a trustee in bankruptcy to set aside a transfer made by the bankrupt, there is no question but that it was made in fraud of his creditors and is voidable as to the original transferee. The only question is whether the proceeds are recoverable from subsequent transferees who are the other defendants.

In 1925 Daniel J. Murphy, who was later adjudicated a bankrupt, purchased certain shares of stock, and had the certificate issued in the name of his infant son Donald, and two years later, on May 3, 1927, pursuant to an order of the surrogate, some of the proceeds of that stock were paid over to the boy's general guardian, the defendant Stella F. Murphy, who was also his mother and the wife of Daniel. This transfer was entirely without consideration, and was a fraud on creditors. She deposited $11,036.47 of the fund in the defendant State of New York National Bank on May 6, 1927, in a special interest account under her own name as general guardian, pursuant to the surrogate's order, and at the same time used part of the rest to purchase Serbian bonds, for which she received interim certificates which she placed in a safe deposit box which she rented from the same bank in her name as general guardian. It is this deposit and the Serbian

bonds which are the subject of the present suit.

A voluntary petition in bankruptcy was filed by the father on April 28, 1927, which resulted in an adjudication and the appointment of a trustee. No attempt was made to set aside the transfer, and, no assets having been discovered, the trustee was discharged on May 2, 1929, and the proceeding was closed on the following day by order of the referee. The bankrupt was never granted a discharge from his debts. In January, 1931, the proceeding was reopened, and on April 30, 1931, a new trustee was appointed who commenced the present suit on June 22, 1931.

In the meantime, the certificates for the Serbian bonds have always been retained in the safe deposit box which is in the name of the mother as general guardian, and rental charges for the box for the intervening years have probably accumulated. The bank account, which included merely the initial deposit and the periodic addition of interest, remained without any withdrawal until August 26, 1931, which was after the bankruptcy proceeding had been reopened and the present action commenced. On that date the bank paid over the entire balance, $13,210.84, to a receiver in supplementary proceedings pursuant to an order of the county judge of Ulster county.

▪ The supplementary proceeding was based upon a judgment obtained by the defendant herein, the Rondout National Bank of Kingston, N. Y., against the father and mother individually. Of course, such judgment could not properly be satisfied out of funds which she held as general guardian for her son, but the defendants contend that the ward transferred all his interest to her on April 8, 1929, by a general release two weeks after he became of age. Assuming this to be true, she acquired the fund in her own right without any consideration, and received no better title than the son's, which was fraudulent as to creditors of the bankrupt.

▪ The receiver in supplementary proceedings to whom the fund was paid by the State of New York National Bank disbursed it by paying to the judgment creditor, the Rondout National Bank, $8,121.18; to the State of New York National Bank, $4,379.33, in satisfaction of an alleged lien on the deposit; and to the mother individually $327.33, as the balance remaining after defraying the various legal expenses of the proceeding.

Clearly the Rondout National Bank and the mother must refund to the trustee what they received. The Rondout National Bank acquired no better title than the mother, because it gave no new consideration for the money nor in any way changed its position, and therefore its equities are no greater than the mother's, whose title was voidable, if, indeed, she had any title. The bank is not in the position of a creditor who has been paid money which had no earmarks; but, on the contrary, it, by judicial process, seized a portion of a specific fund which was equitably owned by this plaintiff.

▪ Even though the payments were made pursuant to orders of the county judge in the supplementary proceeding, the trustee is in no way foreclosed because, if the judge had jurisdiction to make the disposition, the trustee not only was not a party to the proceeding, but had no notice of it. The various parties to the supplementary proceeding knew of the reopening of the bankruptcy proceeding and of the pendency of the present suit, but either deliberately or otherwise failed to inform the trustee of the disposition of the fund which he was claiming.

▪ As to the defendant State of New York National Bank, it claimed a lien on the deposit, and the validity of that will be hereafter considered. But, aside from the alleged lien, that bank is liable to the trustee for the entire amount which it paid over to the receiver in supplementary proceeding. The deposit account, whether legally owned by the son or the mother, was equitably owned by the trustee, and the bank not only had notice of the latter's claim, but was a party to the present suit upon it when the amount of the deposit was turned over to the receiver. It is true that this payment was compelled by order of the county judge, but the bank gave the trustee no notice or opportunity to appear and prosecute his claim in that proceeding. The bank clearly took the responsibility of an improper disposition of the fund, and is in the position of a stakeholder who permits one claimant to obtain a judgment without giving another an opportunity to protect his rights.

▪ The lien which the State of New York National Bank asserted against the deposit in its hands was based upon an hypothecation of the account by the general guardian to secure a loan by the bank to the father and the latter's attorney, Brinnier. On January 29, 1930, the father and Brinnier obtained a loan of $4,000 from the bank, and gave their joint note in that amount, indorsed by the mother as general guardian.

She at the same time, without authority from the surrogate, delivered the pass book to the bank as security and also a check on the account in the same amount signed by herself as general guardian. · This was done ten months after the ward had reached maturity and had given his mother the general release, but the bank was not aware of these circumstances. The irregularity in the transaction is in part explained by the fact that the son and his general guardian had always considered the fund as actually owned by the father who completely controlled their conduct in regard to it. Presumably the bank also recognized that, notwithstanding the formal title in the son or his general guardian, the real control was in the father; otherwise it would be impossible to understand the acceptance of the hypothecation of a guardianship account to secure the payment of the note of the father and Brinnier. The makers never paid it, and the receiver in supplementary proceedings under order of the county judge recognized the lien on the account as valid, and paid the State of New York National Bank the amount of it.

While the loan and hypothecation of the account occurred . in the interval between the discharge of the first trustee and the appointment of the plaintiff, that circumstance is not conclusive, because the discharge of the trustee and the closing of the case by the referee did not have the effect of revesting in the bankrupt the right to undiscovered assets which should have been applied to his unpaid debts. The State of New York National Bank was chargeable with notice of the bankruptcy even if, as seems unlikely, it had no actual information of it. The situation is therefore presented where a bank made a loan to an adjudicated bankrupt in reliance upon his control over a bank account nominally held by his wife as general guardian of his son. While there is no evidence that the bank had notice that the fund had originally been transferred to the general guardian in fraud of creditors, it must have assumed that the son and the general guardian had the fund for the benefit of the bankrupt, or it would not have participated in the diversion of the guardianship property. The bank had no knowledge that the son was of age and had given the guardian a general release, and it either intended to assist in a grave wrong against the ward or it assumed the bankrupt's right to the money.

Furthermore, the bank had actual notice that the federal government claimed a lien on the deposit based on arrears of the bankrupt's income taxes, and that was the reason the general guardian's check on the account, which was accepted as part of the security for the bankrupt's note, had never been used by the bank to pay the note. The Treasury Department's notice of levy filed with the bank in September, 1927, did not state that it was based on the bankrupt's income, but it is improbable that the bank made no inquiry of the depositor or her agent, Brinnier, when it was accepting her check on the account as collateral and refraining from using it to pay the note which it held.

Under all the circumstances, it seems to me that the State of New York National Bank was chargeable with notice that this family fund was actually controlled by the undischarged bankrupt, and, if it made no inquiry at the time it advanced the $4,000 to him, the omission amounted to bad faith and not mere negligence, as it now claims. This in itself would make the bank's alleged lien on the fund invalid, but it is not the sole ground. The fund was a chose in action which was nonnegotiable in its nature, and under the law of New York state, where all the parties resided, any interest in it could be transferred only subject to the latent equities of third persons. Even if the bank was not chargeable in fact with notice of the rights of the estate in bankruptcy, the alleged lien was subordinate to them under the New York doctrine of latent equities.

In accordance with the above findings, settle on notice a decree against the appropriate parties, awarding to the plaintiff the certificates for the two Serbian bonds, subject to such rental charges as may be proper; the sums received by the Rondout National Bank and Stella F. Murphy from the receiver in supplementary proceedings, with interest from the date of such payments to them; and the entire amount of the fund paid by the State of New York National Bank to the receiver, with interest from the commencement of this suit, without, of course, any reduplication of collection by the plaintiff.