**In re Lamar Barclay PINE, Sr., and Shirlene Tucker Pine, Debtors.**

**Lamar Barclay PINE, Sr. and Shirlene Tucker Pine, Plaintiffs,**

**v.**

**CREDITHRIFT OF AMERICA, INC., Defendant.**

**Bankruptcy No. 1–80–02549.
Adv. No. 1–80–0073.**

United States Bankruptcy Court,
E. D. Tennessee.

May 26, 1981.

Ronald J. Berke, Chattanooga, Tenn., for plaintiffs.

Mark J. Mayfield, Chattanooga, Tenn., for defendant.

## MEMORANDUM

RALPH H. KELLEY, Bankruptcy Judge.

On December 31, 1980, debtors filed a voluntary Petition under Chapter 7 of the Bankruptcy Reform Act of 1978. 11 U.S.C. § 101 et seq. (the "Code").

The debtors scheduled certain household goods and claimed them as exempt. No objection was filed to the claim of exemptions.

Debtors filed an adversary proceeding against Credithrift of America, Inc., seeking to avoid a nonpossessory, nonpurchase money security interest in household goods under 11 U.S.C. § 522(f)(2).

The creditor filed an answer and cross complaint as follows:

## ANSWER

For answer to the complaint herein filed against it, Credithrift of America, Inc., through its attorney, respectfully shows:

1. It admits jurisdiction.

2. It admits plaintiffs-debtors filed a bankruptcy under Chapter 7, Title 11, U.S.C. on December 31, 1980, and that this defendant-creditor was duly scheduled.

3. It admits it has a non-purchase money security interest in household goods.

4. It denies the Bankruptcy Reform Act of 1978, Title 11, United States Code, provides for the voiding of its security interest.

5. If wrong under paragraph 4, above, then, the State of Tennessee has opted out of the Federal Exemptions under 11 U.S.C. § 522, and Tennessee Exemptions do not interfere with plaintiffs-debtors' exemptions. The portion of the property subject to the security interest is not exempt under Tennessee law.

6. Defendant-creditor has a valid security interest which survives this proceeding.

And, now, having fully answered, this defendant-creditor prays to be dismissed with its costs.

## CROSS–COMPLAINT

And now assuming the position of a cross-complainant, Credithrift of America, Inc. respectfully shows:

7. That it is entitled to recover possession of its security under its security agreement, with damages for the detention.

WHEREFORE, cross-complainant prays that it be permitted to reclaim its security, and that debtors be ordered to surrender up same upon demand, with damages for the detention, and costs.

Generally, the issues raised by Credithrift have been dealt with by this court in two earlier decisions. *In re Giles*, 9 B.R. 135 (Bkrtcy.1981) (*Giles v. Credithrift of America, Inc.*); *In re Farris*, 8 B.R. 186 (Bkrtcy. 1981) (*Farris v. Barclays American Financial, Inc.*).

The court's opinions in *Farris* and *Giles* are attached and incorporated as a part of this memorandum.

Those opinions do not outline the legislative history regarding the enactment of 11 U.S.C. § 522(f). This opinion will provide some background and commentary on the subject of avoidance of nonpossessory, nonpurchase money security interest in household items.

We will start with a report of the Commission on the Bankruptcy Laws of the United States in its 1973 Report to The President, The Chief Justice of the United States and The Congress. House Document No. 93–127, Part II, 93rd Congress, 1st Session.

The following appears in the report:

At page 169:

Of particular importance to the consumer debtor are exemptions and dis-

charge. These are essential features of a system of financial rehabilitation of financially troubled individuals. Although the need for exemptions and discharge is recognized by the present Act, its provisions are ineffective.

\* \* \* \* \* \*

The Commission is also of the opinion that nonpurchase-money security interests should not be enforceable as to items of property essential to a debtor's well-being, such as wearing apparel, which are of little or no value to a creditor, other than as a means of coercing payment. At page 170:

In order to make the exemption policy more effective, the Commission recommends that a waiver of the federal exemptions be unenforceable by a creditor that does not have security in the property, and that nonpurchase money security be unenforceable as to wearing apparel, household goods, and health aids.

At page 173:

a. *Nonwaiver.* The Commission recommends that the federal exemption policy not be frustrated by consensual waivers. A creditor should be allowed to prevail over the allowable exemptions only if security is taken. What is often an unknowing or uniformed surrender of exemption right should no longer be countenanced under the federal bankruptcy law. And in recognition of the possibility that creditors will simply obtain security, both as to existing and after-acquired assets, rather than rely on waivers, the Commission recommends that nonpurchase-money security interests in wearing apparel, household goods, and health aids be unenforceable against property allowed to the debtor as exempt.

Following the report of the Commission on Bankruptcy Laws of the United States the Congress commenced hearings on revision of the Bankruptcy Act.

One witness who testified before the House Judiciary Committee was David H. Williams, an attorney with the Division of Special Projects, Bureau of Consumer Protection, Federal Trade Commission. His testimony commences on page 166, H.R. Report 95–595, 95th Congress, 1st Session, U.S.Code Cong. & Admin.News 1978, pp. 5787, 6127, 6128. He testified that from 1972–1974 the staff of the Division of Special Projects visited one hundred and thirty branch offices of twelve major consumer finance companies. Thirty states were visited.

\* \* \* \* \* \*

Overall, this investigation afforded us with in depth exposure to the day to day activities of the consumer finance industry. It enabled us to develop a composite picture of thousands of debtors who experienced default and collection during the years in question.

The purpose of this investigation was to identify certain statutory and contractual collection remedies and procedures which might be unfair to consumers within the ,meaning of Section Five of the Federal Trade Commission Act.

It was the conclusion of the witness that

One of the most important and widely abused devices available to the large credit institution is a blanket security interest in household necessities.

\* \* \* \* \* \*

Virtually every creditor we investigated retained such a lien in all appropriate contracts. Some liens are specific, enumerating furniture, bedding, linens, pots and pans, and the like. Other were cast in general form merely applying to every household good of every kind and description.

. . . [A] blanket lien on household goods is among the most effective levers available for securing an anticipatory reaffirmation of a debt which is otherwise dischargeable in bankruptcy.

Based on the cases we examined in our investigation, and on the findings and recommendations prepared by the National Commission on Consumer Finance, we believe that there is no justification whatsoever for the common practice of requiring debtors to pledge all of their household property to small lenders. For

this reason, we support the proposed unwaivable exemption with respect to assets in the bankrupt estate of an individual consumer. We can conceive of few practices in today's consumer market which are more debilitating and demoralizing than the repeated threat to seize the household necessities of an insolvent and his family, items which, as a practical matter, have little if any economic value to the creditor. These kinds of threats do not enhance the economic situation of either party. They subvert the specific policy which underpins personal bankruptcy.

In 1977 the House of Representatives ordered printed a report on Bankruptcy Law Revision. H.R. Report No. 95–595, 95th Congress, 1st Session. It contains 549 pages.

The following portions of the report appear relevant to the present case. At pages 116–118, U.S.Code Cong. & Admin.News 1978, p. 6076:

As we have become a consumer society, we have also become a credit society. The Bankruptcy Commission documented the tremendous rise in the amount of credit outstanding for personal, family, or household purposes, and it is not necessary to reiterate those data here.

The result of the increase in consumer credit has been a corresponding increase in the number of consumers who have overburdened themselves with debt.

. . . When the crises finally erupt, the experience of the [credit] industry in collecting from overburdened debtors allows it an enormous advantage against the inexperienced and generally distraught consumer . . . Bankruptcy often provides the only remedy.

However, under current law, the resort to bankruptcy has not always provided an effective remedy . . .

Creditors have developed techniques that enable them to avoid the effects of a debtor's bankruptcy, and bankrupts have suffered accordingly. Frequently they come through bankruptcy little better off than they were before. Overbroad security interests on all of a consumer's household and personal goods, reaffirmations, limited State exemption laws, and litigation over dischargeability of certain debts have all contributed to the consumer debtor's postbankruptcy plight.

This bill attempts to cure these inadequacies in the Bankruptcy Act and to prevent the frequent problems confronting consumer debtors that have occurred both in the bankruptcy court and out.

\* \* \* \* \* \*

. . . [W]hether the debtor uses chapter 7, Liquidation, or chapter 13, Adjustment of Debts of an Individual, bankruptcy relief should be effective, and should provide the debtor with a fresh start.

The report examines the subject of exemptions. At pages 126 and 127, U.S.Code Cong. & Admin.News 1978, p. 6087, it is stated:

. . . The historical purpose of these exemption laws has been to protect a debtor from his creditors, to provide him with the basic necessities of life so that even if his creditors levy on all of his nonexempt property, the debtor will not be left destitute and a public charge.

\* \* \* \* \* \*

. . . [T]here is a Federal interest in seeing that a debtor that goes through bankruptcy comes out with adequate possessions to begin his fresh start.

\* \* \* \* \* \*

In addition, the bill gives the debtor certain rights not available under current law with respect to exempt property. The debtor may void any judicial lien on exempt property, and any nonpurchase money security interest in certain exempt property such as household goods. The first right allows the debtor to undo the actions of creditors that bring legal action against the debtor shortly before bankruptcy. Bankruptcy exists to provide relief for an overburdened debtor. If a creditor beats the debtor into court, the debtor is nevertheless entitled to his exemptions. The second right will be of more significance for the average con-

sumer debtor. Frequently, creditors lending money to a consumer debtor take. a security interest in all of the debtor's belongings, and obtain a waiver by the debtor of his exemptions. In most of these cases, the debtor is unaware of the consequences of the forms he signs. . The creditor's experience provides him with a substantial advantage. If the debtor encounters financial difficulty, creditors often use threats of repossession of all of the debtor's household goods as a means of obtaining payment.

In fact, were the creditor to carry through on his threat and foreclose on the property, he would receive little, for household goods have little resale value. They are far more valuable to the creditor in the debtor's hands, for they provide a credible basis for the threat, because the replacement costs of the goods are generally high. Thus, creditors rarely repossess, and debtors, ignorant of the creditors' true intentions, are coerced into payments they simply cannot afford to make.

*The exemption provision allows the debtor, after bankruptcy* has been filed, and creditor collection techniques have been stayed, *to undo the consequences of a contract of adhesion, signed in ignorance, by permitting the invalidation of nonpurchase money security interests in household goods.* Such security interests have too often been used by over-reaching creditors. The bill eliminates any unfair advantage creditors have. (Emphasis added)

It is 11 U.S.C. § 522(f) which permits the avoidance of certain liens. At page 362, U.S.Code Cong. & Admin.News 1978, p. 6318, the House Report says of this section:

Subsection (f) protects the debtor's exemptions, his discharge, and thus his fresh start by permitting him to avoid certain liens on exempt property. The debtor may avoid a judicial lien on any property to the extent that the property could have been exempted in the absence of the lien, and may similarly avoid a nonpurchase-money security interest in certain household and personal goods.

The avoiding power is independent of any waiver of exemptions.

In May of 1978 the Senate ordered to be printed S. Report 95–989, 95th Congress 2d Session. The report contained 177 pages.

As to avoiding power of § 522(f) the Senate Report at page 76, U.S.Code Cong. & Admin.News 1978, p. 5862, states the subsection:

. . . protects the debtor's exemptions, his discharge, and thus his fresh start by permitting him to avoid certain liens on exempt property. The debtor may avoid a judicial lien on any property to the extent that the property could have been exempted in the absence of the lien, and may similarly avoid a nonpurchase-money security interest in certain household and personal goods. The avoiding power is independent of any waiver of exemptions.

There appears to be agreement in the reports of the Senate and House as to the meaning of the section in question. The two bodies adopt identical language.

After years of study and compromise the House and Senate finally agreed on a new bankruptcy law. It was forwarded to the White House in October, 1978.

On November 6, 1978, the President signed the fifth bankruptcy law of the United States. It is cited as Pub.L.No. 95–598 and contains § 522(f), as follows:

(f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

(1) a judicial lien; or

(2) a nonpossessory, nonpurchase-money security interest in any—

(A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor;

(B) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor; or

(C) professionally prescribed health aids for the debtor or a dependent of the debtor.

While there were substantial differences in many sections of the Senate and House bills, it should be noted that as to avoidance of certain liens by the debtor, there was no difference.

The history of the avoidance section is as follows:

On September 8, 1977, the Committee on Judiciary of the House of Representatives reported favorably H.R. 8200.

It contained § 522(f) as follows:

(f) The debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor, notwithstanding any waiver of exemptions, would have been entitled under subsection (b) of this section, if such lien is—

(1) a judicial lien; or

(2) a nonpurchase-money security interest in any—

(A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor;

(B) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor; or

(C) professionally prescribed health aids for the debtor or a dependent of the debtor.

On July 14, 1978, the Committee on Judiciary of the United States Senate reported favorably S.2266.

It contained § 522(e) as follows:

(e) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

(1) a judicial lien; or

(2) a nonpossessory nonpurchase-money security interest in any—

(A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor;

(B) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor; or

(C) professionally prescribed health aids for the debtor or a dependent of the debtor.

As noted earlier the reports of each legislative body explaining the avoiding power are identical. Each report clearly says that:

. . . The debtor may avoid a . . . non-purchase-money security interest in certain household and personal goods. The avoiding power is independent of any waiver of exemptions.

In spite of the legislative history it is creditor's contention that:

. . . § 522(f) does not provide for the declaring of a non-purchase money security interest void or unenforceable. Reading the language of that section as stated in ordinary everyday language, it prohibits any further liens from being placed upon the exempt property.

The creditor further argues:

. . . that the purpose of this Subsection is not to void or knock off a lien already existing (which is not subject to the Trustee's voiding powers), but is to prevent a lien from "fixing" on property which is properly claimed as exempt. A lien already existing does not have to fix; it is already fixed.

■ It is apparent from the legislative history that § 522(f) was meant to apply to

security interests already existing and attached at the time of bankruptcy. S.Rep.No. 95–989, 95th Cong., 2d Sess. 76 (1978); H.R.Rep.No. 95–595, 95th Cong., 1st Sess. 362 (1977); Report of the Commission on Bankruptcy Laws of the United States, H.R.Doc.No. 93–197, 93d Cong., 1st Sess., Part I at 169, 173 (1973). Why Congress used the term "fixing of a lien" is not immediately apparent.

The court can see one reason for Congress' use of the term "fixing of a lien". Other subsections of § 522 refer to "transfers" avoidable under § 522(f). 11 U.S.C. § 522(g)(2) & (i) (1979). Technically the "fixing of a lien" is a transfer, but the lien itself is not. 11 U.S.C. § 101(40) (1979). (Transfer defined).

■ Section 522(f) allows the debtor to avoid the very granting of a lien. Granting of a lien is synonymous with "fixing of a lien". Even under the Act one definition of a "transfer" was the "fixing of a lien." 11 U.S.C. § 101(30).

What the debtor is doing is analogous to the trustee's avoidance of a late perfected security interest under the preferential transfer section. Under that section, technically the trustee avoids the grant of the security interest, i. e., the transfer made within the preference period. 11 U.S.C. § 547 (1979). The terminology used in § 522(f) is consistent in concept with other provisions of the Code.

The terminology used by the Congress is understood by the authors of Collier on Bankruptcy, 15th Edition, as allowing debtor the power to avoid nonpossessory, nonpurchase money security interest in household goods.

In volume 3, Collier, supra, the following appears at p. 522:

¶ 522.29. Judicial Liens and Liens in Certain Property. § 522(c), (f).

[1]—Generally.

Whereas section 522(c) allows the protection of the debtor's exemption in property which was subject to a lien voided by the trustee, subsection (f) allows the debtor to avoid the fixing of certain liens

to the extent that such a lien impairs an exemption. When a lien is voided pursuant to the trustee's avoiding powers, the lien remains void after deducting the value of the exemption protected under section 522(c), even though the value of the property that is exempted is less than the total value to which the lien is attached. When the debtor avoids the fixing of a lien, pursuant to section 522(f), however, the lien is avoided only to the extent of the exemption, and the value of the lien that exceeds the amount that is exempted may still be enforced by the creditor.

The liens that the debtor may avoid pursuant to subsection (f) include judicial liens, and nonpossessory, nonpurchase-money security interests in property that is allowed an exemption under sections 522(d)(3), (4), (6) and (9). Even if the debtor chooses the state exemptions, this avoiding power applies, but only to property that is exempt under state law that is of the same kind as the property allowed under those four paragraphs of section 522(d) . . . Nonpossessory, non-purchase-money security interests in the following may be voided: household furnishing, household goods . . . Though the property on which liens that may be avoided is the same as several of the exemptions allowed by the Code, a debtor who claims the state exemption may avoid a lien in such property to the extent that such an exemption is allowed by the state. Subsection (f) grants this avoiding power with regard to any exemption allowed under subsection (b) including the state option. The avoiding power of subsection (f) is independent of any exemption. In addition, if a state opted out of the federal exemption, it does not affect the debtor's power under subsection (f).

The terminology used by the Congress apparently is understood by Commerce Clearing House, Inc. In 1978 the company published the Bankruptcy Reform Act of 1978 in its entirety and "a CCH explanation of its provisions . . ."

On page 43 appears an explanation of § 522(f) as follows:

The debtor's exemptions are protected since a waiver of exemptions or of his avoiding powers is unenforceable in a bankruptcy case. Further protection is afforded the debtor by permitting him to avoid certain liens on exempt property. He may avoid a judicial lien on any property if that property could have been exempted absent the lien. Similarly, he may avoid a nonpurchase money security interest in certain household and personal goods.

The terminology used by the Congress apparently is understood by the authors of *A Practical Guide to the Bankruptcy Reform Act* by Harvey R. Miller and Michael L. Cook (1979). At page 191 appears the following:

*Certain Liens on Exempt Property Invalid.* Section 522(f) gives the debtor the right to avoid " . . . any nonpurchase money security interest in certain exempt property such as household goods." Specifically, an individual debtor can use Section 522(f)(2) to protect from nonpossessory, nonpurchase money interests "household furnishings, household goods, wearing apparel, appliances, books, animals . . . or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent," as well as professionally prescribed health aids and implements used in his business. The ability to avoid nonpurchase money security interests will afford significant relief to the consumer debtor. "Frequently, creditors lending money to a consumer debtor take a security interest in all of the debtor's belongings, and obtain waiver by the debtor of his exemptions . . . . If the debtor encounters financial difficulty, creditors often use threats of repossession of all the debtor's household goods as a means of obtaining payment." Although such household goods have little, if any, resale value, as long as they are in the debtor's hands they retain a significant value to the consumer creditor—" they provide a credible basis for the threat, because the replacement costs of goods are generally high. Thus, creditors rarely repossess, and debtors . . . are

coerced into payments they simply cannot afford to make."

The terminology used by the Congress apparently is understood by the author of *Adjustment of Debts of an Individual with Regular Income, Chapter 13, Title I, Federal Bankruptcy Act* by Walter Ray Phillips, Assistant Dean of the University of Georgia Law School comments at page 60 on § 522(f) of the Code as follows:

Subsection (f) protects the debtor's exemptions, his discharge, and thus his fresh start by permitting him to avoid . . . a nonpurchase-money security interest in specified household and personal goods. The avoiding power is independent of any waiver of exemptions. It is important to note that the debtor may likewise avoid the nonpossessory security interest in each of the subsection classifications.

The wisdom of § 522(f) may be of concern to a distinguished attorney who represents creditors and is the author of the following book. The terminology, however, gives him no doubt about what Congress meant.

In his new book, *Creditors and the New Bankruptcy Code*, Second Edition 1980, William R. Mapother, devotes much space to § 522 of the Code commencing at page 66:

"Since most consumers have mortgaged most if not all of their property, the exemption laws help them very little. What good is it for a debtor to have a $1,200 exemption on a car if his car is fully mortgaged? If the car is worth $5,000 and the car loan balance is $5,000, there is no equity, so the exemption is meaningless to him. The debtor will have to pay the full amount of the loan or face repossession. When the debtor files a bankruptcy petition, he is often confronted with his secured creditors or losing his mortgaged property.

The drafters of the new Code were well aware that consumer exemptions looked good on paper but had little practical significance. So the drafters decided to provide a special category of *super exemption*. By this I mean an exemption

that even overrides a mortgage and enables a lien to be extinguished by the bankruptcy. Under § 522(f), the debtor will be able to avoid (wipe out) liens on certain property to the extent that such lien impairs his exemptions. The super exemptions wipe out the following two categories of liens:

1. A judicial lien, [. . . omitted as not relevant to this decision]

2. A nonpossessory, nonpurchase money-security interest in exempt household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for personal, family or household use, and also implements, professional books, tools of the trade or professionally prescribed health aids. This means that if the loan is secured by household goods already owned by the debtor at the time of the loan, the security interest can be avoided by the debtor.

Several points should be stressed in regard to this category of super exemptions. First of all, a purchase-money security interest is not avoidable by the debtor and is treated like any other security interest . . .

Most commentators acknowledge that this super exemption was primarily aimed at finance companies, because they often will take a security interest in household goods. The household goods often have a low resale value but a high replacement value, and finance companies have been able to obtain reaffirmations of the full balance on many of their bankrupt accounts. To reduce and discourage these reaffirmations, Congress decided to invalidate the typical consumer security interest in household goods on a nonpurchase-money loan. What the consumer lender must remember in making such a loan is that the lien will not stand up in bankruptcy court. As far as bankruptcy is concerned, a nonpurchase-money loan collateralized by a security interest in exempt household goods is nothing more than a signature loan.

\*   \*   \*   \*   \*   \*

Note that the distinction between purchase-money and nonpurchase-money only applies to household goods, household furnishings, etc. It does not apply to cars, boats, mobile homes, or real estate.

Both the federal exemptions in § 522(d) and the super exemptions in § 522(f) apply in Chapter 13 proceedings. The practical implication of this in a Chapter 13 case is that a creditor with a nonpurchase-money security interest in exempt household goods will not be treated as a secured creditor.

The super exemptions are super in their ability to override liens, but they are also in another respect. The provision permitting state legislatures to override the federal exemptions does not apply to the super exemptions. In other words, the right of the debtor to override the two types of liens set forth in § 522(f) cannot be overridden by state legislative action. But the two types of super exemptions only exist to the extent that the property subject to the two types of liens is exempt, and the dollar amount of exemption in each category can be set by state legislative action.

This means, for example, that a state cannot override the right of a debtor to avoid a judicial lien, but his avoidance is only to the extent that property covered by the judicial lien is exempt. Since the residence exemption under the Code is $7,500, the debtor can avoid a judicial lien up to $7,500 worth of equity in his residence. If a state legislature overrides the federal residence exemption and reduces the dollar amount of the exemption to $4,000, then the debtor could only avoid the judicial lien up to $4,000 worth of equity.

If a state legislature were to adopt, for example, a household goods exemption of $1,000 rather than a per-item exemption of $200, then a debtor could only avoid a nonpurchase-money security interest in $1,000 worth of his household goods. Being able to exempt a *total* of $1,000 in household goods is a far cry in most cases

from being able to exempt an *unlimited* number of household items under $200 per item. Setting a dollar value of $1,000 or $2,000 on the total household goods owned by a debtor would be fairer to creditors, as it would eliminate some of the extreme prebankruptcy planning encouraged by the Code.

In short, while the two super exemptions in § 522(f) cannot be modified, the amount of property to which the super exemptions apply can be modified by a state legislature wishing to invalidate the federal exemptions in § 522(d) and adopting lower dollar amounts."

The terminology used by the Congress apparently is understood by one Judge of the Bankruptcy Court for the Eastern District of Tennessee. He recently discussed the question of avoiding a security interest at the Southeastern Bankruptcy Law Institute in Atlanta on March 18, 1981.

The subject of "Avoidance of Liens" was a part of the paper presented at the Institute by the Honorable Clive Bare, Judge of the Bankruptcy Court for the Eastern District of Tennessee. In part Judge Bare said:

"With respect to *exempt* property, the Bankruptcy Code gives the individual debtor certain rights that were not available to him under the prior Bankruptcy Act.

\* \* \* \* \* \*

"*Nonpossessory, Nonpurchase-Money Security Interests*

1. Nonpossessory, nonpurchase-money security interests in household and certain personal property may be avoided by the debtor to the extent that the lien impairs an exemption to which the debtor is entitled. Sec. 522(f)(2).

\* \* \* \* \* \*

3. As enacted in subsection 522(f)(2), liens may be avoided on—

   a. household goods
   b. household furnishings
   c. wearing apparel
   d. appliances
   e. books
   f. animals
   g. crops
   h. musical instruments
   i. jewelry
   j. implements
   k. professional books
   l. tools of trade (of the debtor or a dependent of the debtor)
   m. professionally prescribed health aids (of the debtor or a dependent of the debtor).

4. Under Sec. 522(f) a lien may be avoided ' . . . on any property to the extent that the property could have been exempted in the absence of the lien.' S.Rep. 95–989, 95th Cong.2d Sess. 76; H.R.Rep.No.95–595, 95th Cong. 1st Sess. 362.

\* \* \* \* \* \*

7. There is no time limitation fixed in Sec. 522(f) for the avoidance of liens. Local rules should be consulted, however. Frequently debtors are not aware that they have signed security agreements covering their household goods and may go through a bankruptcy case unaware that an avoidable lien is in fact held by a creditor. There appears to be no prohibition against the debtor asserting his rights under Sec. 522(f), even after the case has been closed.

8. Some decisions involving Sec. 522(f) are beginning to surface.

\* \* \* \* \* \*

c. *In re Hill*, 4 B.R. 310, 6 B.C.D. 307 (Bkrtcy.N.D.Ohio 1980), the court held that; even though a state (Ohio) had prohibited the use of federal bankruptcy exemptions under Sec. 522(d), it did not affect the debtor's power under Sec. 522(f) to avoid liens and security interests. The avoiding power of subsection (f) is independent of any exemption. 'In addition, if a state opts out, it does not affect the debtor's power under subsection (f).' See Collier on Bankruptcy, Vol. 3 para. 522.29 (15th ed. 1980)."

\* \* \* \* \* \*

From the above legislative history and commentary the court finds that § 522 of the Bankruptcy Reform Act of 1978 does provide for the avoiding of defendant's non-possessory, nonpurchase money security interest in plaintiffs' household goods which were claimed as exempt.

While the consumer finance industry does not like § 522, it nevertheless generally agrees with the court as to its meaning.

On April 3, 1981 this section of the Code was referred to by Professor Jonathan M. Landers, a consultant and spokesman for the creditor group. He said:

> The punitive provision which invalidates nonpurchase money security interests in furniture and household goods should be replaced by one which permits the consumer to retain the items by paying their reasonable value over a period of time.

Professor Landers and two other spokesmen appeared before the Subcommittee on Courts of the Senate Committee on Judiciary on April 3, 1981.

Pages 37 and 38 of their testimony contained the following:

> The purpose of the avoidance of non-purchase money security interests in household goods and tools of the trade was to preserve property which is necessary to the debtor's "fresh start." That fresh start could be impaired if the debtor had to pay the full amount of the debt to retain goods which were necessary for minimal living standards, and which had a high replacement value.
>
> The present provision is a classic example of overkill. It assumes that if the security interest is valid, the debtor will lose the goods, finds that the consumer needs to keep them, and invalidates the security interest in toto to avoid such a result. Such a scheme creates a serious imbalance in the rights of debtors and creditors. Moreover, it effectively precludes consumers from making loans secured by such articles since the security interest will not be valid in bankruptcy. The result is either severe economic loss to the creditor or effectively depriving

the consumer of his ability to pledge his property as security.

> The rights of debtors and creditors can be better balanced, and the objective of Congress enabling the debtor to retain property necessary for a fresh start still can be preserved. Rather than invalidating the security interest entirely, the debtor should be permitted to redeem the property over a five year period ...

This testimony is quoted for the purpose of showing that the credit industry generally understands the avoiding power of § 522 and recognizes that its remedy lies with the Congress and not the courts.

The defendant next argues that if the Code does provide for the avoidance of its lien then

> ... the State of Tennessee has opted out of the Federal Exemptions under 11 U.S.C. § 522, and Tennessee Exemptions do not interfere with plaintiffs-debtors' exemptions. The portion of the property subject to the security interest is not exempt under Tennessee law.

In 1978, the Tennessee Legislature amended the Tennessee Code Annotated as follows:

> 26–2–112. Exemptions for the purpose of bankruptcy.—The personal property exemptions as provided for in this part, and the other exemptions as provided in other sections of the Tennessee Code Annotated for the citizens of Tennessee, are hereby declared adequate and the citizens of Tennessee, pursuant to section 522(b)(1), Public Law 95–598 known as the Bankruptcy Reform Act of 1978, Title 11 U.S.C., section 522(b)(1), are not authorized to claim as exempt the property described in the Bankruptcy Reform Act of 1978, 11 U.S.C. 522(d). [Acts 1980 (Adj.S.), ch. 919, § 4; T.C.A., § 26–901.]
>
> 26–2–102. Personal property selectively exempt from seizure.—Personal property to the aggregate value of four thousand dollars ($4,000) debtor's equity interest shall be exempt from execution, seizure or attachment in the hands or possession of any person who is a bona fide

citizen permanently residing in Tennessee, and such person shall be entitled to this exemption without regard to his vocation or pursuit or to the ownership of his abode. Such person may select for exemption the items of the owned and possessed personal property, including money and funds on deposit with a bank or other financial institution, up to the aggregate value of four thousand dollars ($4,000) debtor's equity interest. [Acts 1978 (Adj.S.), ch. 915, § 3; 1980 (Adj.S.), ch. 919, § 2; T.C.A., § 26–202.]

In this proceeding the total value of the household goods is less than $4,000. There is no question that the household goods could have been exempted in the absence of defendant's lien.

■ The defendant argues that while T.C.A. 26–2–102 allows a $4,000 exemption in personal property that it applies only to "debtor's equity interest," or to that portion of debtor's household goods not subject to defendant's security interest.

As noted in *In re Giles*, supra,

In the legislative history of § 522(f), Congress specifically recognized that exemptions are allowed out of the debtor's equity. Both committee reports say that a debtor may avoid liens under § 522(f) to the extent the property *could have been* exempted in the absence of the lien. S.Rep.No.95–989, 95th Cong., 2d Sess. 76 (1978); H.R.Rep.No.95–595, 95th Cong., 1st Sess. 362 (1977). Thus § 522(f) was meant to operate under the law as the Tennessee statute now specifically provides.

If the Tennessee statute is applied as argued, the court doubts that it could stand. Probably it would be unconstitutional as applied in bankruptcy cases, because not within the state's power under § 522(b) and in direct conflict with § 522(f). [citations omitted] The constitutional question, however, is not before the court, has not been argued, and need not be answered. The court therefore makes no holding as to the constitutionality of the Tennessee statute.

The court concludes that under § 522(f) of the Bankruptcy Code and under the Tennessee statute, the debtors can avoid Barclays' security interest so that there will be equity up to the amount of the exemption that would be allowed in the absence of the security interest. In this case that means that the security interest is entirely avoided since the total value of the collateral would be exemptable in the absence of the security interest.

An order will enter avoiding the security interest of defendant in plaintiffs' household goods.

This memorandum constitutes findings of fact and conclusions of law. Bankruptcy Rule 752.