**BENEFICIAL FINANCE CO. OF VIRGINIA, Appellant,**

v.

**Allen Lee FRANKLIN, et al., Appellees.**

**Civ. A. Nos. 82–0144(L)—82–0151(L).**

United States District Court,
W.D. Virginia,
Lynchburg Division.

Jan. 4, 1983.

Robert B. Hill, Cummings & Dick, Petersburg, Va., R. Chambliss Light, Jr., Lynchburg, Va., for appellant.

Hugh J.M. Jones, III, Lynchburg, Va., for appellees.

## MEMORANDUM OPINION

TURK, Chief Judge.

These consolidated actions, involving essentially identical factual situations, are appeals from an Order of the Bankruptcy Court. Appellees are individuals who have been adjudged bankrupt and granted discharges. Their bankruptcy cases have been closed. Appellant is a finance company which, prior to the filing of the bankruptcy petitions, lent the appellees money. To secure these loans, the creditor obtained and perfected blanket security agreements designating the debtors' household goods as collateral.

The debtors, in filing their petitions, did not list appellant as a secured creditor. The court assumes (although this is not certain from the record) that the appellant was listed on the schedules accompanying the petitions as an unsecured creditor.

Appellant remained mute during the bankruptcy proceedings and then, when the cases were closed, filed state court replevin actions to enforce its liens. The debtors removed the actions to the Bankruptcy Court and moved that court to reopen their bankruptcy cases to allow them to file lien avoidance actions under 11 U.S.C. § 522(f).

■ The Bankruptcy Court granted the motions, holding (1) that there is no statutory bar to the filing of § 522(f) actions; and (2) that 11 U.S.C. § 350(b) allows the court to reopen the proceedings for the purpose of filing such actions. The creditor appeals from this ruling. This court concludes that the plaintiff debtors were statutorily barred from filing lien avoidance actions after their bankruptcies were closed, and accordingly reverses the decision of the Bankruptcy Court.

Understanding of certain procedural aspects of the Bankruptcy Code is vital to consideration of the issues presented by this appeal. Accordingly, the preliminary paragraphs of this opinion will constitute somewhat of a necessary digression.

■ At the commencement of a bankruptcy case, an "estate" is created. 11 U.S.C. § 541(a). This estate consists of, *inter alia,* "(1) ... all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Property in which the debtor has only legal title, however, becomes part of the estate only to that extent. Any equitable interest in the property that the debtor does not hold does not become a part of the estate. 11 U.S.C. § 541(d).[1]

■ In order to give the debtor a "grub stake," the Code allows him to exempt from the estate certain items, including "[t]he debtor's interest, not to exceed $200 in value in any particular item, in household furnishings, household goods, wearing apparel, appliances, books, animals, crops, or musical instruments, that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor." 11 U.S.C. § 522(d)(3).[2]

■ The debtor takes his exemptions out of property of the estate. Accordingly, he cannot exempt items to the extent they are encumbered by valid security interests; he can only claim exemptions to the extent of his equity interest in the goods.[3] Conversely, a valid lien will survive a discharge in bankruptcy.[4] *Long v. Bullard,* 117 U.S. 617, 6 S.Ct. 917, 29 L.Ed. 1004 (1886) (the 1978 Code adopts the *Long v. Bullard* rule. H.R. Rep. No. 95–595, *supra* note 3, at 361, [1978] U.S.Code, Cong. & Adm.News 5787 at 6317); 11 U.S.C. § 522(c).

Many liens, however, are thought to be oppressive to the debtor. The ones at issue here are of that type: a finance company, such as appellant, often lends money to a debtor and takes back a blanket security interest covering all of the debtor's possessions.[5]

1. Section 541(d) provides:
   Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest ... becomes property of the estate under subsection (a) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.
   See also *In re Losieniecki,* 17 B.R. 136, 138 (Bkrtcy., W.D.Pa.1981); *In re Giles,* 9 B.R. 135, 139 n. 4 (Bkrtcy., E.D.Tenn.1981), aff'd, 18 B.R. 708 (E.D.Tenn.1982); *In re Morgan,* 6 B.R. 701, 703 (Bkrtcy., M.D.Tenn.1980).

2. Section 522(d) identifies the exemptions. Section 522(b) provides, in relevant part, that "[n]otwithstanding section 541 of this title, an individual debtor may exempt from property of the estate ... (1) property that is specified under subsection (d) of this section...."

3. See H.R.Rep. No. 95–598, 95th Cong., 2d Sess. 360–61 (Sept. 8, 1977), *reprinted in* [1978] U.S.Code, Cong. & Adm.News 5963, 6316:

   Property may be exempted even if it is subject to a lien, but only the unencumbered portion of the property is to be counted on in computing the "value" of the property for the purposes of exemption. Thus, for example, a residence worth $30,000 with a mortgage of $25,000 will be exemptable to the extent of $5,000.
   See also *In re Morgan,* 6 B.R. 701, 703 (Bkrtcy., M.D.Tenn.1980).

4. That is, unless it is "avoided" under § 522(f). See discussion immediately below.

5. Such loans are thought to be oppressive because the collateral tends to have a low resale value but a high replacement value. The creditor thus has leverage to coerce payment. See *In re Pine,* 11 B.R. 595 (Bkrtcy., E.D.Tenn. 1981), aff'd, 18 B.R. 711 (E.D.Tenn.1982), for an excellent and thorough treatment of the legislative history which culminated in the lien avoidance provisions.

To correct these perceived abuses, Congress included in the 1978 Code provisions allowing debtors to avoid such liens. Section 522(f) creates the substantive right. It provides, in relevant part:

> (f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—
>
> \*    \*    \*    \*    \*    \*
>
> (2) a nonpossessory, nonpurchase-money security interest in any—
>
> (A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor.[6]

Within the context of the bankruptcy action, this provision makes much sense. The debtor will hold property which falls within one of the exemptions found in § 522(d). The property, however, will be encumbered by a security interest and will not, *pro tanto,* be included as part of the bankrupt's estate under § 541. *See* p. 638, *supra.* Section 522(f) enables the debtor to avoid the security interest.

■ Once the interest is avoided, § 522(i)(1) operates. It provides:

> If the debtor avoids a transfer[7] ... under subsection (f) ... of this section, the debtor may recover in the manner prescribed by, and subject to the limitations of, section 550 of this title, the same as if the trustee had avoided such transfer, and may exempt any property so recovered under subsection (b) of this section.

Thus, when the lien is avoided, the equitable interests in the collateral merges with the legal title. *In re Losieniecki,* 17 B.R. 136, 137–38 (Bkrtcy., W.D.Pa.1981). The debtor then claims his exemptions.[8]

Other portions of § 522 are consistent with this scenario. Subsections (i)(2), (g), and (j) of § 522, when read together, insure that the liens are avoided only to the extent that the debtor has remaining unused exemptions. Further, § 522(i)(2) provides that, notwithstanding § 551, the avoided transfer is held for the benefit of the debtor (§ 551 would otherwise automatically preserve the avoided transfer for the benefit of the estate).

Section 522(i)(1) contemplates three distinct steps: (1) avoidance of the transfer; (2) "recovery"; and (3) exemption of the property recovered. The "recovery" step is explicitly made subject to the trustee's ability to "recover" the property transferred after avoiding a transfer under § 550.[9]

---

**6.** Note the parallel language in § 522(d)(3), (4).

**7.** A "transfer," as defined in 11 U.S.C. § 101(40), "means every mode, direct or indirect, *absolute or conditional, voluntary or involuntary,* of disposing of or parting with property or with an interest in property, including retention of title as a security interest." This term includes the "fixing of a lien" as used in § 522(f). The previous Code defined "transfer" as including "fixing a lien upon property or upon an interest therein...." 11 U.S.C. § 1(30) (1977). Section 101(40) of the 1978 Code is "derived and adapted, with stylistic changes, from section 1(30) of the Bankruptcy Act." S.Rep. No. 95–989, 95th Cong., 2d Sess. at 27 (July 14, 1978), *reprinted in* [1978] U.S. Code, Cong. & Adm.News 5787, 5813. Further, "the definition of transfer is as broad as possible. Many of the potentially limiting words in current law are deleted, and the language is simplified." *Id. See also In re Pine,* 11 B.R. 595, 601 (Bkrtcy., E.D.Tenn.1981), *aff'd,* 18 B.R.

711 (E.D.Tenn.1982); *In re Giles,* 9 B.R. 135, 137 (Bkrtcy., E.D.Tenn.1981), *aff'd,* 18 B.R. 708 (E.D.Tenn.1982).

**8.** To the extent *In re Darder,* 3 B.R. 641 (Bkrtcy., E.D.Va.1980) suggests that the debtor first claims his exemptions and then avoids the liens on the property so exempted, it is clearly at variance with the words of the statute and this court rejects its analysis.

**9.** Section 550(a) provides:

> (a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of the property, from—
>
> (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made....

Like § 522, § 550 "enunciates the separation between the concepts of avoiding a transfer and recovering from the transferee." H.R.Rep. No. 95–595, *supra* note 3, at 375, [1978] U.S.Code, Cong. & Adm.News at 6331.[10]

Since the debtor's right to "recover" property is expressly made subject to § 550, the section can be interpreted to read as follows:

> Except as otherwise provided in this section, to the extent that a transfer is avoided under section [522(f)] of this title, the [debtor] may recover, for the benefit of the [debtor], the property transferred, or, if the court so orders, the value of such property, from—
>
> > (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made . . . .

■ According to appellant, the debtor's right to "recover" the avoided transfer is limited by § 550(e) which provides:

> (e) An action or proceeding under this section may not be commenced after the earlier of—
>
> > (1) one year after the avoidance of the transfer on account of which recovery under this section is sought; and
> >
> > (2) the time the case is closed or dismissed.

Because of this section, says appellant, the debtor's lien avoidance complaints, filed after their cases were closed, are barred. In other words, the transfers, once "avoided," must be "recovered" into the bankrupts' estates, and then exempted.[11]

To prevail in this argument, appellant must establish three propositions: first, that a lien avoidance complaint under § 522(f) is ineffectual to assist the debtor unless followed and completed by "recovery" and "exemption" under § 522(i)(1);[12] second, that "recovery" means bringing the "transfer" into the § 541 estate for purposes of exemption; and, third, that "property," as utilized in §§ 522(i)(1) and 550(a) refers to the lien granted to the appellant, and not only to the physical collateral.

With regard to the first of these hurdles, the debtors argue that they are not seeking to "recover" anything—all they desire is avoidance of the liens on their household goods. To support this they point to the authorities distinguishing between "avoidance" and "recovery." The appellant creditor argues that lien avoidance is incomprehensible without the corresponding "recovery" and, then, exemption.[13] Creditor's argument, again, makes much sense prior to the closing of the estate. Before the debtor obtains his discharge, his action in avoiding a lien, by itself, does not benefit him. Rather, it benefits the general creditors of the estate. He should then "recover" the property—whatever that means—and, finally, exempt it.[14] But when the case has been closed, this is not *necessarily* so. The discharge voids personal judgments against

---

**10.** Reinforcing this distinction is 11 U.S.C. § 546(a), which expressly limits the trustee's ability to avoid transfers.

**11.** Further, the cases cannot be reopened to allow filing of the lien avoidance complaints and then the "recovery" actions, for this would emasculate § 550(e). *Kinder v. Scharff*, 231 U.S. 517, 34 S.Ct. 164, 58 L.Ed. 343 (1913).

**12.** Section 522(f), granting the substantive right to avoid fixing of liens, does not specify a statute of limitations. The statute of limitations on "recovery" and, derivatively, on exemption, found in §§ 550(e) and 522(i)(1), does not also apply directly to avoidance actions. As noted earlier, the concepts of "avoidance" and "recovery" are distinct. *See* note 10 and accompanying text, *supra*. *See also* § 546, expressly limiting the *trustee's* right to avoid transfers.

**13.** Supporting creditor on this aspect is 4 *Collier on Bankruptcy* § 550.02 n. 5 (15th ed. 1982): "Normally, the trustee's action to avoid a transfer will be coupled with an action for recovery of the property transferred or its value."

**14.** Even so, however, it does not follow inexhorably that the debtor must do this. Section 522(i)(1) is permissively worded. It is conceptually possible for the debtor to avoid the liens and stop there, thus benefitting the general creditors.

the debtor with respect to debts discharged under 11 U.S.C. § 727. 11 U.S.C. § 524(a)(1). When the debtor is discharged, and the case subsequently closed, the § 541 "estate," having been created by the commencement of the action, presumably is closed with the case.[15] Only the liens on the property survive. 11 U.S.C. § 522(c). By avoiding the liens, conceivably, the debtor holds his property free and clear. Unsecured, pre-discharge creditors cannot reach him or his property. Thus, he has no reason to "recover" the property and exempt it. The lien avoidance complaint will result in a declaratory judgment that the liens are avoided, and this gives the debtor all the relief he needs.

This point must be resolved in favor of the creditor. Even though certain steps contemplated by the Code do not make a great deal of sense once the bankrupt's case has been closed, the provisions at issue were undoubtedly written with the § 541 estate in mind. That is, it must have been contemplated that lien avoidance actions would be filed in the context of a bankrupt's estate; that, once avoided, the transfer would be "recovered"—brought into the estate—; and from there the debtor would take his exemptions. This being so, it is rational to assume that the same would hold true after

the estate were closed; *viz.,* that a debtor seeking to avoid a lien would be required to do so in the context of "avoidance" + "recovery" + "exemption." The debtor could not simply avoid the transfer and dispense with the other two steps.

Accordingly, it is necessary to consider the remaining obstacles to creditor's argument. The second problem involves the meaning of the word "recover." According to the creditor, this refers to bringing the transferred property interest—the lien—into the estate. Again, this makes perfect sense prior to the closing of the estate: the encumbered portion of the property, once avoided, must be brought into the estate, or else remain in limbo. "Recovery" is rendered necessary by the fact, discussed earlier, that the beneficial interest held by the creditor does not, at the commencement of the bankruptcy case, become part of the estate.[16] This is especially so if one considers the term "property" to include the liens which, having granted them to appellant, the debtors now seek to avoid. *See* pp. 641–643, *infra.* (It is really not possible to consider the terms in isolation from one another.)

If, in fact, liens are "property," then the court finds no affirmative basis for concluding that "recovery" is meant in the restric-

---

**15.** *See also* 11 U.S.C. § 524(a)(2): "A discharge in a case under this title—... (3) operates as an injunction against the commencement or continuation of an action, the employment of process, or any act, to collect, recover or offset any such debt as as personal liability of the debtor, *or from property of the debtor....*" (emphasis added). *Cf. Bennet v. Murphy,* 1 F.Supp. 129, 131 (S.D.N.Y.1932) ("closing of the case by the referee did not have the effect of revesting in the bankrupt the right to undiscovered assets which should have been applied to his unpaid debts."), *aff'd,* 64 F.2d 1009 (2d Cir.1933). There is no indication that the assets in these consolidated actions were, like those in *Bennet,* concealed. Debtor's position, however, has the potential for operating as a fraud upon the general creditors.

**16.** Sections 551 and 550, in conjunction with § 541(a)(3) and (4), present some problems for this analysis. Section 551 provides that "[a]ny transfer avoided under section 522 ... is preserved for the benefit of the estate...." (Its

purpose is to "prevent junior lienors from improving their positions at the expense of the estate as a whole...," and it operates automatically. H.R.Rep. No. 95–595, *supra* note 3, at 376, [1978] U.S.Code, Cong. & Adm.News at 6332.) Section 541(a)(3) and (4), further, includes, as property of the estate, property recovered under § 550, and property preserved for the benefit of the estate under § 551. One could argue, reading these provisions together, that avoided transfers automatically become property of the estate, and that "recovery" means something different. It is not assured that these problems can be reconciled with the court's decision. Nevertheless, the inconsistencies resulting from the finding that the Code provides a statute of limitations against lien avoidance actions are outweighed by those which would result from a contrary holding. Until Congress speaks, however, the logomachy engendered by these confusing provisions must continue unabated to vex the federal courts.

tive sense of physical repossession of tangible collateral. *But see* note 16, *supra.* One might just as easily "recover" one as the other if the verb means, as *The American College Dictionary* says it does, "to get again, or regain (something lost or taken away): *to recover lost property.*" *The American College Dictionary* 1013, def. 1 (1969) (emphasis in original).

■ This rationale, of course, depends upon the definition of "property," which is appellant's third hurdle, and to which this court now turns. Debtors contend that "property" refers to the physical collateral, and not the intangible interests in that collateral, such as the security interests at issue here.[17] Creditor argues, however, that property is used in its broadest sense to include the latter.

There is much persuasive support for creditor's contention. *See* Bkr.L.Ed. *Legislative History* § 81:3 (*citing Congressional Record* P H 11,090 (Sept. 28, 1978)). Cases under the just compensation clause of the Fifth amendment are also instructive:

> The critical terms are "property," "taken" and "just compensation." It is conceivable that the first was used in its vulgar and untechnical sense of the physical thing with respect to which the citizen exercises rights recognized by law. On the other hand, it may have been employed in a more accurate sense to denote the group of rights inhering in the citizen's relation to the physical thing, as the right to possess, use and dispose of it. In point of fact, the construction given the phrase has been the latter.

*United States v. General Motors Corp.,* 323 U.S. 373, 377–78, 65 S.Ct. 357, 359–60, 89 L.Ed. 311 (1945); *accord, Pruneyard Shopping Center v. Robins,* 447 U.S. 74, 82 n. 6,

100 S.Ct. 2035, 2041 n. 6, 64 L.Ed.2d 741 (1980). Further, the Court recently held that liens such as those in issue here are "property" for purposes of the just compensation clause. *United States v. Security Industrial Bank,* —— U.S. —— at ———— ——, 103 S.Ct. 407, at 410–412, 74 L.Ed.2d 235 (1982) (§ 522 cannot be applied retroactively to avoid pre-enactment liens).[18] Language within the Code also supports creditor's view. *See e.g.* 11 U.S.C. § 522(g)(2), allowing the debtor to exempt "property" recovered by the trustee to the extent he could have avoided "such transfer" (which includes the granting of a lien) under § 522(f)(2).

There are also indications to the contrary. Section 550(d), for example, allows a good faith transferee a lien on "property recovered" to secure improvements in the "property transferred." This suggests that § 550 may be more concerned with physical recovery of the collateral. But this does not preclude the finding that § 550 as a whole refers to *any* property, including liens, whereas § 550(d) is only operable when the "property" recovered is a member of that subclass consisting only of property amenable to "improvement." Buttressing this argument is 11 U.S.C. § 541(a)(3) which includes as the estate's "property" "[a]ny *interest in* property that the trustee recovers under Section ... 550 ...." (emphasis added).

Based on the foregoing, one must allow that the drafters of the Code were less than meticulous in their use of the words "property" and "recovery." Either reading is plausible, but the court concludes that the one chosen does the least amount of violence to the wording of the statutory provisions involved. When faced with deciding whether a much earlier law contained a

17. The courts rejecting the analysis under §§ 522(i)(1) and 550 have so held. *See, e.g., In re Beneficial Finance Co. of Virginia,* 18 B.R. 174, 176 (Bkrtcy., E.D.Va.1982); *Matter of Conley,* 17 B.R. 387, 389–90 (Bkrtcy., S.D.Ohio 1982); *Matter of Montney,* 17 B.R. 353, 357

(Bkrtcy., E.D.Mich.1982); *Matter of Swanson,* 13 B.R. 851, 853–56 (Bkrtcy., D.Idaho 1981).

18. *See also* 4 *Collier on Bankruptcy* § 550.02 n. 3 (15th ed. 1979), stating that § 522(i)(1) and (g) permit the "debtor in possession" to recover property from the trustee.

statute of limitations, Chief Justice Marshall said: "In expounding this law, it deserves some consideration, that if it does not limit actions of debt for penalties, those actions might, in many cases, be brought at any distance of time. This would be utterly repugnant to the genius of our laws." *Adams v. Woods,* 6 U.S. (2 Cranch) 335, 341, 2 L.Ed. 297 (1805). It similarly seems highly unlikely that Congress would have contemplated the filing of lien avoidance actions with no temporal limitations.

Most of the courts to address the issue thus far have rejected the foregoing analysis,[19] but none of those grapple with the issue in very much detail. In addition, many of those cases express concern at the possibility of creditors, although having knowledge of the liens and of the lien avoidance provisions, remaining silent when they could very easily eradicate the problem by suggesting the solution: the avoidance of the liens. This, however, clearly has no relevance to the issue whether the Code provides a statute of limitations on avoidance actions.[20]

In light of this disposition, the court need not address the remaining issue as to whether the Bankruptcy Judge utilized an incorrect standard in deciding to reopen the matters. The cases cannot be reopened to avoid the statute of limitations that, this court holds, is contained in the Code. *See* note 11, *supra.*

Accordingly, the decision of the Bankruptcy Court is reversed.[21] The cause will be remanded with instructions for that Court to dismiss the lien avoidance actions filed by plaintiffs. An appropriate Order will be entered this date.

**19.** Only one court, to this court's knowledge, has adopted the §§ 522(i)(1)/550 rationale. *In re Porter,* 11 B.R. 578, 580–81 (Bkrtcy., W.D. Okl.1981). The other courts holding that avoidance actions must be brought prior to discharge or the closing of the case have done so on the ground that § 524(c), concerning reaffirmation agreements, requires it. *In re Krahn,* 10 B.R. 770, 771 (Bkrtcy., E.D.Wis. 1981); *In re Adkins,* 7 B.R. 325, 326–27 (Bkrtcy., S.D.Cal.1980). *See also In re Andrews,* 22 B.R. 623, 626 (Bkrtcy., D.Del.1982); *In re Porter,* 11 B.R. at 579–80. That analysis has been thoroughly discredited, and this court rejects it for the reasons stated in *In re Swanson,* 13 B.R. 851, 853 (Bkrtcy., D.Idaho 1981) and *In re Smart,* 13 B.R. 838, 839–40 (Bkrtcy., D.Ariz.1981).

Other cases holding against the debtor in such actions have done so on equitable grounds, rather than accepting that a statute of limitations applies. *See, e.g., In re Coomes,* 20 B.R. 290 (Bkrtcy., W.D.Ky.1982); *In re Towns,* 16 B.R. 949, 954–55 (Bkrtcy., M.D.Iowa 1982) (debtor barred by laches from filing § 522(f) action when creditor has relied on discharge by filing replevin action in good faith).

The remaining cases have held for the debtor. *See e.g.* cases at note 17, *supra; In re Gortmaker,* 14 B.R. 66, 67–68 (Bkrtcy., D.S.D.1981).

**20.** More troublesome is creditor's failure to protest being listed as having unsecured status in the schedules accompanying the petitions, which presumably was the case here. In creditor's replevin actions, debtors may wish to defend on the grounds that creditor's silence in this regard operated as a waiver of its rights under the security agreements. *See generally* 12 *Michie's Jurisprudence of Virginia and West Virginia* Liens § 18 (1978); 51 Am.Jur.2d Liens §§ 40, 41 (1970 & Supp.1982). *But see In re Andrews,* 22 B.R. 623, 624–25 (Bkrtcy., D.Del. 1982) (liens not voided by discharge even though secured creditor was erroneously listed as unsecured in schedule accompanying petition).

**21.** Counsel for creditor indicated, at oral argument, that it had no intention of actually replevying the collateral owned by these plaintiffs, but it rather wished to establish a precedent for use in future proceedings. Now that defendant has its rule of law, it is hoped that the appellant will demonstrate its sincerity by voluntarily dismissing its replevin actions against the plaintiff.