In re Foster W. (William) LAW, Rosemary (NMN) Law, Debtor(s).

Bankruptcy No. 2–83–03621.

United States Bankruptcy Court, S.D. Ohio, E.D.

Feb. 24, 1984.

Mitchel D. Cohen, Columbus, Ohio, for debtors.

D.L. Mains, Jr., Columbus, Ohio, for creditor.

## OPINION AND ORDER ON LIEN AVOIDANCE UNDER 11 U.S.C. § 522(f)

G.L. PETTIGREW, Bankruptcy Judge.

The matter before the Court is the question of the availability of the lien avoidance provisions of 11 U.S.C. § 522(f) to Ohio debtors. This Court must follow the binding precedent supplied by the United States Sixth Circuit Court of Appeals in the case of *Pine/Giles v. Credithrift of America,* 717 F.2d 281, 10 B.C.D. 1467 (6th Cir.1983), holding that states such as Ohio may preclude the use of 11 U.S.C. § 522(f) by adopting "exemption" statutes to that effect. Consequently, the Court must reluctantly deny the debtors' application for lien avoidance.

## I.

### *Facts*

The debtors have granted a creditor nonpossessory, nonpurchase-money security interests in property which, absent the consensual lien encumbrances, would be exempt under Ohio law. The debtors herein have sought relief under Chapter 7 of the Bankruptcy Code and have filed an application to avoid the lien, pursuant to 11 U.S.C. § 522(f). The application was filed after the effective date of the *Pine/Giles* decision.

## II.

### *Applicable Law*

This matter concerns the interrelation of two subsections of § 522 of the Bankruptcy Code. Subsection (b) allows the states to "opt out" of the federal exemptions listed in subsection (d) of § 522. It states that:

(b) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate either—

(1) property that is specified under subsection (d) of this section, unless the State law that is applicable to the debtor under paragraph (2)(A) of this subsection specifically does not so authorize; or, in the alternative,

(2)(A) any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition, or for a longer portion of such 180-day period than in any other place; and

(B) any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law.

Subsection (f) provides a mechanism to protect the debtors' exemptions by allowing them to avoid improvidently granted liens on otherwise exempt property. It reads as follows:

(f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

(1) a judicial lien; or

(2) A nonpossessory, nonpurchase-money security interest in any—

(A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor;

(B) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor; or

(C) professionally prescribed health aids for the debtor or a dependent of the debtor.

As mentioned above, § 522(b) allows a state to prohibit debtors residing within its borders from utilizing the federal exemptions set out in § 522(d) and to force them to utilize the state exemptions. Ohio has chosen to "opt out" of the federal exemptions and has enacted § 2329.662 of the Ohio Revised Code to make manifest this decision. This statute states that:

Pursuant to the "Bankruptcy Reform Act of 1978," 92 Stat. 2549, 11 U.S.C. 522(b)(1), this state specifically does not authorize debtors who are domiciled in this state to exempt the property specified in the "Bankruptcy Reform Act of 1978," 92 Stat. 2549, 11 U.S.C. 522(c).

Consequently, debtors filing for bankruptcy in Ohio must rely on the exemptions set out in Chapter 2329 of the Ohio Revised Code. After listing these exemptions, the Revised Code imposes a major limitation on the availability of these exemptions in § 2329.-661(C), which reads as follows:

(C) Section 2329.66 of the Revised Code does not affect or invalidate any sale, contract of sale, conditional sale, security interest, or pledge of any personal property, or any lien created thereby.

As a result of § 2329.661(C) of the Revised Code, Ohio debtors are denied exemptions in property that would otherwise be exempt if they had allowed a properly perfected security interest to attach to the property before filing their bankruptcy petition.

### III.

### *Controlling Precedent*

The United States Court of Appeals for the Sixth Circuit has ruled, in the case of *Pine/Giles v. Credithrift of America, Inc., supra,* that states may effectively "opt out" of the lien avoidance provisions of 11 U.S.C. § 522(f) by drafting their exemption statutes very narrowly and denying their resident debtors the opportunity to use the more generous federal exemptions set out in 11 U.S.C. § 522(d). Since Ohio has attempted to do just that, this case is directly on point. Therefore, a close examination of this case is in order.

The *Pine/Giles* case is, in actuality, two cases which were apparently consolidated on the circuit level, pursuant to Rule 3(b) of the Federal Rules of Appellate Procedure. The basic factual patterns of these cases are virtually identical. In each case, the debtors granted Credithrift nonpossessory, non-purchase-money security interests in certain household goods. Both couples subsequently filed voluntary petitions for relief under Chapter 7 of the Bankruptcy Code, pursuant to 11 U.S.C. § 302. In the *Giles* case, the debtors' domiciliary, for purposes of § 522, was Georgia. The Pines, on the other hand, were domiciled in the state of Tennessee.[1] Both cases were filed in the Eastern District of Tennessee in 1980.

---

1. As will be discussed later, the states in which the debtors resided at filing, Georgia and Ten-

Although there were inconsequential procedural differences between the manner in which the issues arose in the two cases, the arguments raised by Credithrift in opposition to the debtors' attempts to avoid the above described liens were identical. Credithrift advanced the following arguments:[2]

1) Since § 522(f) provides that, "... The debtor may avoid the *fixing of a lien* ..." on property which could have been exempted pursuant to § 522(b), it only operates to prevent the attachment of new liens and does not allow a debtor to avoid preexisting liens. (Emphasis added.) See *In re Giles,* 9 B.R. 135, 136–137 (Bkrtcy.E.D.Tenn.1981), *In re Pine,* 11 B.R. 595, 600 (Bkrtcy.E.D.Tenn.1981).

2) Since § 522(f) provides that the debtor may avoid a lien "... on an interest of the debtor in property ..." and the debtor granted Credithrift a security interest in the property in question, the debtor no longer had an "interest in the property" on which the liens in question attached and, therefore, § 522(f) is not applicable. See *In re Giles, supra,* at 138.

3) Since § 522(f) allows a debtor to avoid a lien on property "... to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section ... ," and the applicable state exemption laws[3] provide that a debtor may only claim an exemption from his or her equity interest in qualifying property, no exemption was impaired as the debtors had no equity in the encumbered property and, therefore, § 522(f) could not authorize the lien avoidance sought. See *In re Giles, supra,* at 138; *In re Pine, supra,* at 606.

The Bankruptcy Court rejected each of these arguments. The Bankruptcy Court found that the first argument, in regard to the prevention of the fixing of liens as opposed to voiding preexisting liens, was not well taken because such a construction would deny the vitality and effect of the statute. The intended purpose of § 522(f) is to provide the debtor with a fresh start and to prevent overreaching creditors from diluting this fresh start through unfavorable reaffirmations on debts that were secured by otherwise exempt property. See *In re Giles, supra,* at 136, 137 and *In re Pine, supra,* at 600–605. The Court also noted that the language of § 522(f), while perhaps the result of careless drafting, could also be explained by the unique nature of the avoidance powers of § 522(f), as compared with the other avoidance provisions of the Code such as 11 U.S.C. §§ 544, 545, 547, 548, 549 and 724(a).

The Bankruptcy Court also rejected Credithrift's argument that since the debtors had granted it a security interest in the property, they no longer had an interest in the property within the meaning of § 522(f) and that, therefore, its avoidance provisions were not applicable. The Court correctly stated that while the granting of a security interest in property is indeed a conveyance of a portion of the debtors' rights in the property, it does not totally divest the debtor of any interest in the property. See *In re Pine, supra,* at 138.

The Court similarly rejected Credithrift's third argument. Basing its conclusion on a substantial amount of legislative history, the Court held that Congress intended § 522(f) to operate to avoid liens on property that *would have been exempt under the statutes made applicable by § 522(b) if no*

---

nessee, have both elected to opt out of the scheme of exemptions set out in 11 U.S.C. § 522(d). See 11 U.S.C. § 522(b), *supra.*

**2.** Credithrift advanced an additional argument in the *Giles* case which was similar to the second argument. See *In re Giles, supra,* at 139. However, once that argument was, in this Court's opinion, properly rejected by Bankruptcy Judge Kelley, it was apparently abandoned, as no further references to it appear in either

the reported Bankruptcy or District Court opinions in either case, the parties' briefs at the Circuit level or the Sixth Circuit's opinion.

**3.** As mentioned earlier, both states have opted out of the federal exemption scheme set out in 11 U.S.C. § 522(d). Therefore, the exemptions "... under subsection (b) ..." as referred to in § 522(f) are set out in the statutes of the debtors' respective domiciliary states.

*lien had attached.* The Bankruptcy Court stated that Congress recognized that most exemption statutes only allow debtors to claim exemptions out of their equity in encumbered property, and enacted § 522(f) to allow debtors to create equity in property that would have been exempt but for the lien. The Court found that the purpose of the lien avoidance provisions of § 522 was to allow the debtor to claim the exemption. See *In re Giles, supra,* at 138, 139; *In re Pine, supra,* at 605, 606.

Credithrift appealed both cases to the United States District Court for the Eastern District of Tennessee. Both decisions were affirmed. See *In re Giles,* 18 B.R. 708 (Dist.Ct.E.D.Tenn.1982); *In re Pine,* 18 B.R. 711 (Dist.Ct.E.D.Tenn.1982). The District Court opinions, both of which were written by Chief Judge Wilson, basically ratified the more specific analysis of the Bankruptcy Court. In addition, Judge Wilson stated that Credithrift's analysis of the relationship between subsections (b) and (f) of § 522 could not be correct in light of the clear Congressional goals of providing the financially distressed debtors with a fresh start and frustrating creditors' attempts to coerce debtors into disadvantageous reaffirmation agreements.

Once again, Credithrift appealed, this time to the Sixth Circuit Court of Appeals. Before the Appeals Court, the same three arguments were advanced. This time, however, Credithrift interjected a new argument concerning the legislative history of § 522. It argued that the committee and commission reports relied upon by the lower courts were not relevant due to last minute pre-enactment changes in the content of § 522. Credithrift maintained that since the final version of § 522 was different from the versions described in the committee reports, in that the "opt out" provisions had been added, those committee reports were entitled to little, if any, consideration. It appears that it was this final argument

that persuaded the Sixth Circuit to reverse the decisions of the lower courts. See *Pine/Giles, supra,* at 1469.

Having disposed of the legislative history to the contrary, the Appellate Court held that when Congress authorized the states, in § 522(b), to set exemptions and restrict their resident debtors to those exemptions, it necessarily gave them the power to draft these exemptions in whatever manner they deemed proper, including the restriction of exemptions to the debtors' equity interests in otherwise exempt property. The court then determined that both Tennessee and Georgia had in fact done so.

From there, the Court reasoned that since, pursuant to § 522(b), these states had precluded any exemption in property in which the debtors had no equity,[4] no exemption "... to which the debtor would have been entitled under subsection (b) ..." was impaired. Hence, it concluded that the condition precedent for lien avoidance, pursuant to subsection (f), was not present and, therefore, that the liens could not be avoided pursuant to that subsection.

This Court is disappointed with the analysis employed by the Sixth Circuit in the *Pine/Giles* case. The legislative intent has been ignored. Furthermore, rules of statutory construction have been abused.

### IV.

*Legislative History*

The Sixth Circuit Court of Appeals chose to discount the weight of the committee reports describing the intended operation of § 522(f) because it felt that changes in the subsequent versions of § 522 made these reports inapplicable, particularly the changes concerning the "opt out" provisions of the present § 522(b). The Sixth Circuit should have held that the subsequent inclusion of the "opt out" provisions of § 522(b) did not change the intended operation of the lien avoidance provisions of § 522.[5]

---

**4.** It is interesting to note that when confronted with the same issue, the Eleventh Circuit Court of Appeals reached an opposite conclusion as to the operation of the Georgia statute in-

volved. See *In re Maddox,* 713 F.2d 1526, 9 C.B.C.2d 568 (11th Cir.1983).

**5.** In addition to the arguments stated in the text, the Court of Appeals also felt that resort

## A.

The present Bankruptcy Code is the result of an eight year process that began in 1970 with the formation of the Commission on the Bankruptcy Laws of the United States. This Commission was charged with the task of studying the then existing bankruptcy laws, court structure and administration and recommending any changes that should be made. The Commission issued a report in 1973 which included a proposed set of bankruptcy statutes to replace the 1898 Bankruptcy Act. This proposed statute contained the following language, which was the precurser of the present § 522(f):

> § 4–503(f) Waiver; Liens.—A waiver of exemptions is unenforceable by a creditor without security in the property allowed to the debtor pursuant to this section. A lien obtainable by legal or equitable proceedings and, with respect to wearing apparel, household goods, and health aids, any lien created by an agreement to give security other than for a purchase money obligation, is unenforceable against the property allowed to the debtor pursuant to this section as exempt, except that such lien may be preserved for the benefit of the debtor.

The Commission included this provision because it was concerned about the overreaching of creditors who, because of the debtor's ignorance or lack of bargaining power, obtained blanket liens on property of the debtor that would otherwise be exempt. This property usually has a *de minimus* resale value but had a high replacement cost. The Commission found that creditors would often threaten to repossess this property in order to coerce debtors to reaffirm the otherwise dischargeable debts secured by this essential property. This often caused the debtor to come out of bankruptcy in little better condition than he entered it, thus frustrating the goal of allowing honest debtors an opportunity for a fresh start. See *Report of the Commission on the Bankruptcy Laws of the United States,* House Document No. 93–127, 93d Cong., 1st Sess., Part I, at 169–178.

The Commission was not the only group concerned with the nation's bankruptcy laws during the early 1970s. The National Conference of Bankruptcy Judges submitted a proposed bankruptcy code in 1974, which contained language identical to the lien avoidance provisions of § 4–503(f) of the Commission's proposed bill. The major difference between the two proposals' treatment of exemptions concerned the ap-

to the legislative history of § 522 was not appropriate because the "... clear language of the statute takes precedence over the more general rehabilitative policies underlying the Act." *Pine/Giles, supra,* at 1469. While this reasoning may have a superficial appeal, it has been consistently rejected by the United States Supreme Court. This is clear from the following excerpt from *Train v. Colorado Public Interest Research Group, Inc.,* 426 U.S. 1, 10, 96 S.Ct. 1938, 1942, 48 L.Ed.2d 434 (1976). "As we have noted before: 'When aid to construction of the meaning of words, as used in the statute, is available, this certainly can be no 'rule of law' which forbids its use, *however clear the words may appear on superficial examination.'*" (Citations omitted, emphasis added.) See also *Cass v. United States,* 417 U.S. 72, 94 S.Ct. 2167, 40 L.Ed.2d 668 (1974); *Harrison v. Northern Trust Co.,* 317 U.S. 476, 63 S.Ct. 361, 87 L.Ed. 407 (1943); *United States v. American Trucking Associations,* 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940); *Boston Sand and Gravel Co. v. United States,* 278 U.S. 41, 49 S.Ct. 52, 73 L.Ed. 170 (1928); *Helvering v. New York Trust Co.,* 292 U.S. 455, 54

S.Ct. 806, 78 L.Ed. 1361, 43 S.Ct. 65, 67 L.Ed. 199 (1934); *Barrett v. Van Pelt,* 268 U.S. 85, 45 S.Ct. 437, 69 L.Ed. 857 (1925); *Ozawa v. United States,* 260 U.S. 178, 43 S.Ct. 65, 67 L.Ed. 199 (1922). Furthermore, this is particularly true when giving effect to the literal language of the statute would produce a result that is contrary to the underlying policy goals of the statutory scheme. See *Helvering, supra; American Trucking Assoc., Inc., supra; Ozawa, supra.* This approach has been consistently followed by the federal appellate courts in other circuits, as well as in the Sixth Circuit itself. See *Church of Scientology v. United States Dept. of Justice,* 612 F.2d 417 (9th Cir.1979); *Preterm, Inc. v. Dukakis,* 591 F.2d 121 (1st Cir.1979); *Mohegan Tribe v. Connecticut,* 638 F.2d 612 (2d Cir.1980); *Steiner v. Mitchell,* 215 F.2d 171 (6th Cir.1954), rehearing denied 220 F.2d 751, Affd. 350 U.S. 247, 76 S.Ct. 330, 100 L.Ed. 267. Since the Sixth Circuit itself has indicated that the result in this case is contrary to the rehabilitative goals underlying the Bankruptcy Act, *Pine/Giles, supra,* at 1469, this Court feels bound by the weight of authority to examine the legislative history of § 522.

plicability of state created exemptions in bankruptcy proceedings.[6] Both bills provided that liens against property that would be classified as exempt would not be enforceable. Compare § 4–503(f) of the Commission's bill and § 4–503(h) of the bankruptcy judges' bill. Both proposals envisioned the lien avoidance provisions operating in their own right, and neither made the operation of such provisions dependent on separate authorization, aside from classifying what property would be exempt in the absence of a lien.

After the Commission and the judges conference submitted their proposals, Congress began in earnest its work on the present Bankruptcy Code. After considerable delay in the 93d and 94th Congresses,[7] the House Judiciary Committee prepared what was to become known as H.R. 8200. The report that accompanied this bill indicated that the committee, like the Commission, was aware of the overreaching made possible by creditors' blanket liens on otherwise exempt property. See H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 125–127 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787. The House responded to this by passing the following version of § 522(f):

> (f) The debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor, notwithstanding any waiver of exemptions, would have been entitled under subsection (b) of this section, if such lien is—
>
> (1) a judicial lien; or

(2) a nonpurchase-money security interest in any—

(A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor;

(B) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor; or

(C) professionally prescribed health aids for the debtor or a dependent of the debtor.[8]

The House Judiciary Committee Report, *supra,* at page 362, explains how this subsection was intended to operate. The House intended that "The debtor may avoid a judicial lien on any property *to the extent that the property could have been exempted in the absence of the lien, and may similarly avoid a nonpurchase-money security interest in certain household and personal goods*" (emphasis added). This makes it clear that the House of Representatives intended the debtor to be able to claim his exemptions as if no lien existed. Subsection (f) was then to be applied to avoid any nonpurchase-money liens on the otherwise exempt property so that the debtor would be able to enjoy his exemption. It is equally clear that the House did not intend to make the avoidance of this type of lien dependent on a separate authorization in the applicable exemption laws. H.R. 8200 was passed by the full House of Representatives in early February of 1978.

*Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) and Lewin, *Bankruptcy Court Crisis Near,* N.Y. Times, Jan. 26, 1984, at 27, Col. 3.

---

**6.** The Judges' proposal would have required the debtors to rely exclusively on the exemptions provided in that bill. The Commission's proposal would have allowed the debtors to choose between the exemptions provided by the state of their domicile and those set out in the bill itself.

**7.** This delay was caused at first by Congressional preoccupation with the possible impeachment of former President Nixon and later continued when the Congress first contemplated the potential constitutional flaws in the then proposed structure of the Bankruptcy Courts. Although the first problem is behind us, the second problem has yet to be solved. See

**8.** It should be noted that with the exception of an inconsequential change in the placement of the phrase "... notwithstanding any waiver of exemptions ..." and an additional qualification that only nonpossessory nonpurchase-money liens may be avoided, this version is identical to the version of subsection (f) finally enacted.

On the Senate side, the Senate Judiciary Committee developed what was to become Senate Bill 2266. It too contained lien avoidance provisions, which were as follows:

> (e) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—
>
> (1) a judicial lien; or
>
> (2) a nonpossessory nonpurchase-money security interest in any—
>
> (A) household furnishings, household goods, wearing apparel, applicances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor;
>
> (B) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor; or
>
> (C) professionally prescribed health aids for the debtor or a dependent of the debtor.[9]

The report that accompanied this bill indicates that the lien avoidance provisions were intended to operate in the same manner envisioned by the House. The following excerpt from S.Rep. No. 95–989, 95th Cong., 2d Sess. at 76, U.S.Code Cong. & Admin.News 1978, pp. 5787, 5862, shows this to be the case:

> Subsection (e)[10] protects the debtor's exemptions, his discharge, and thus his fresh start by permitting him to avoid certain liens on exempt property. *The debtor may avoid a judicial lien on any property to the extent that the property could have been exempted in the absence of the lien, and may similarly avoid a nonpurchase-money security interest* in certain household and personal goods. (Emphasis added.)

Hence it becomes clear that both the Senate and the House of Representatives viewed the operation of the lien avoidance provisions of the § 522(f) in the same manner. Both intended lien avoidance to be an option provided by a separate part of the federal bankruptcy laws, distinct and independent from the applicable exemption laws, be they federal, state or local. Neither house intended these provisions to be operative only if the applicable exemption laws themselves provided for lien avoidance.[11] Both houses intended the lien avoidance provisions to operate in their own right.

Senate Bill 2266 was passed, in effect,[12] by the Senate on September 7, 1978. It contained significant departures from the House Bill passed in February of 1978. As far as exemptions were concerned, it differed from the House Bill in that it called for the application of state exemptions while the House Bill provided for national, federally determined exemptions. Aside from a grammatical change,[13] the lien avoidance provisions differed only in that the Senate restricted avoidance to nonpossessory, nonpurchase-money liens, while the House Bill made no distinction between possessory and nonpossessory liens. Both the

**9.** It should be noted that this version of what was to become § 522(f) is identical to the present § 522(f), as signed into law by President Carter on November 6, 1978.

**10.** The lien avoidance provisions of S. 2266 were denominated as subsection (e) in the Senate Bill. Nonetheless, they were identical to the present subsection (f).

**11.** Indeed, if the availability of lien avoidance was to be controlled by the applicable exemption statutes, there would have been no need for the inclusion of the avoidance provisions as a separate provision of the Bankruptcy Code. To hold to the contrary is to make § 522(f) a mere redundancy. Such a construction would be contrary to established rules of statutory construction. See *Jackson v. Kelly,* 557 F.2d 735 (10th Cir.1977); *United States v. Blasius,* 397 F.2d 203 (2d Cir.1968), cert. denied 393 U.S. 1008, 89 S.Ct. 615, 21 L.Ed.2d 557. See Section V(a), *infra.*

**12.** See *Collier on Bankruptcy,* Appendix 2, XIX (15th Ed.1983).

**13.** See Note 8, *supra.*

House and Senate Bills contemplated lien avoidance provisions as operating to allow debtors to exempt encumbered property as if no lien existed. Both bills contemplated lien avoidance as a right derived from a separate provision of the bankruptcy laws, not as a right dependent on authorization by the applicable exemption laws.

Because of the discrepancies between the two bills on such matters as the source of exemption laws and the structure of the bankruptcy courts, some sort of device was needed to make these bills congruent. Instead of the usual conference committee, the floor managers of the two bills met and hammered out a compromise. This compromise bill was passed by the House on September 28, 1978. Since there was no conference committee, the usual conference committee report was not issued. Instead, a substitute was provided by having a statement of the compromises read into the Congressional Record. In regard to § 522, the following excerpt, at 124 *Cong.Rec.* H 11,-095–96 (Daily Ed. Sept. 28, 1978), summarizes the changes affecting § 522:

> Section 522 of the House amendment represents a compromise on the issue of exemptions between the position taken in the House bill, and that taken in the Senate amendment. Dollar amounts specified in section 522(d) of the House bill have been reduced from amounts as contained in H.R. 8200 as passed by the House. The States may, by passing a law, determine whether the Federal exemptions will apply as an alternative to State exemptions in bankruptcy cases.
>
> Section 522(c)(1) tracks the House bill and provides that dischargeable tax claims may not be collected out of exempt property.
>
> Section 522(f)(2) is derived from the Senate amendment restricting the debtor to avoidance of *nonpossessory,* nonpurchase money security interests. (Emphasis added.)

As is evident from these comments, while significant changes were made in regard to the "opt out" provisions of § 522(b) and the dollar amounts of the federal exemptions of § 522(d), the only change made in the lien avoidance provisions was the restriction of avoidance power only to nonpossessory, nonpurchase-money liens, as was called for in the Senate Bill, rather than allowing avoidance of all nonpurchase-money liens. Certainly, no fundamental change in the relationship between the "opt out" provisions and the lien avoidance provisions was indicated. The compromise bill, as passed by the House on September 28, 1978, still contemplated allowing the debtor to avoid any qualifying liens on the otherwise exempt property and then having him claim his exemptions as if no lien had existed. It did not make the availability of lien avoidance dependent on the provisions of the applicable exemption laws.

The compromise bill was then submitted to the Senate, which passed it with some amendments, not relevant to the matter of lien avoidance. See 124 *Cong.Rec.* H 11866 (Daily Ed. Oct. 6, 1978). Again, no fundamental changes in the intended operation and interrelation of the lien avoidance and opt out provisions were indicated. The only mention of any change in § 522 was in comments by Senator Wallop of Wyoming, which merely refers to the fact that the "opt out" provisions were enacted. No mention is made of this allowing the states to "opt out" of the lien avoidance provisions of § 522(f). No change was indicated in the basic operation of the lien avoidance provisions, as described above.

The amended compromise bill was then sent back to the House, which passed it on October 6, 1978. Prior to this vote, Representative Edwards, one of the prime movers of the Bankruptcy Reform Act, described to the House what last minute changes were made by the Senate. No mention was made of lien avoidance. See 124 *Cong.Rec.* H 11864–66 (Daily Ed. Oct. 6, 1978). One must reasonably infer from this that no major changes were contemplated in this area.

The final product of this legislative maelstrom was signed into law by President Carter on November 6, 1978. The final version of § 522(f) is identical to § 522(e)

of S. 2266. The committee report covering S. 2266 clearly indicates that subsection (f) [14] was to operate to allow the debtor to avoid any nonpossessory, nonpurchase-money liens on property that would otherwise be exempt under the applicable exemption laws. It indicates that subsection (f) operates to turn encumbered property into exempt property by removing the encumbrance to the extent of the exemption. It neither states nor infers that the avoidance provisions of subsection (f) are available only if the applicable exemption statutes authorize such avoidance.

No changes were made in the text of § 522(f) between the time S. 2266 was first passed by the Senate [15] and the time that the President signed the final legislative product. None of the intervening changes in other parts of the Bankruptcy Code appear to mandate a different analysis, as far as lien avoidance is concerned, from that indicated in the committee reports on H.R. 8200 and S. 2266. None of the intervening descriptions or debates on the changes indicate that any change was contemplated. Therefore, this Court is convinced that the final legislative product of the eight year process described above contemplates the following operation of the lien avoidance provisions of § 522:

*First,* the applicable exemption statutes must be consulted to determine what type of property could be exempted absent any encumbrance;

*Secondly,* the debtor's property must be examined to determine if any of it would fall within the criteria outlined by the applicable exemption statutes if it were not encumbered; and,

*Finally,* if the property would fit within the categories established by applicable law absent the nonpossessory, nonpurchase-money lien, § 522(f) can be brought to bear to avoid the lien to the extent of the applicable exemption.

14. See Note 8, *supra.*

15. See Note 8, *supra.*

16. In addition to the state exemptions, both H.R. 8200 and S. 2266 allowed the debtor to

This Court cannot concur with the Sixth Circuit's conclusion that the last minute compromises on the Bankruptcy Reform Act make the previously described legislative history inapplicable. Nonetheless, this Court will follow the mandate of the Sixth Circuit as its decisions are binding on this Court.

*B.*

As mentioned earlier, the Sixth Circuit felt that the subsequent inclusion of the "opt out" provisions of § 522(b) made the prior House and Senate reports on the intended operation of § 522(f) irrelevant. This Court feels that a close examination of the text of the House and Senate bills, and the descriptions in the corresponding reports, indicates that the subsequent change in the provisions of § 522(b) did not change the intended operation of § 522(f).

The House version of § 522(b), as passed in H.R. 8200, allowed a debtor to choose between the exemptions authorized by his domicilliary state and those set out in § 522(d). It did not provide the states with an opportunity to "opt out," as does the present version. The committee report describing the bill made no mention in its discussion of the lien avoidance provisions of the impact of a debtor's deciding to utilize the state created exemptions on the availability of lien avoidance. Instead, it indicated that whatever the source of the exemption, the debtor could avoid any nonpurchase-money lien on property that would have been exempt if no lien had attached. See H.R.Rep. 95–895, *supra,* at 362. Hence, it is clear that under the House version of § 522, lien avoidance was available regardless of which set of exemptions the debtor chose.

S. 2266, on the other hand, required a debtor to rely exclusively on state and local exemptions.[16] These exemptions were the only available to the debtor and, like the

exempt other specific property rights enumerated in other, non-bankruptcy, federal statutes. See House Report, *supra,* at 360 and Senate Report, *supra,* at 75.

present version of § 522(b), it placed no express restrictions on the type or size exemptions that a state or locality could provide for its debtors. In spite of this total deference to state law, the committee report describing this bill indicated that the lien avoidance provisions were intended to act as a supplement to whatever exemptions that state or local law provided. It clearly indicated that it would operate to remove nonpossessory nonpurchase-money liens on property that would have been exempt were it not for the lien. See S.Rep. 95–989, *supra,* at 76. In effect, the report recognized that while the bill granted the states the right to define the type and amount available, it also provided separate and distinct right of lien avoidance created by federal law.

In light of the foregoing, it becomes apparent that under both original House and Senate bills, the lien avoidance provisions were viewed as acting as a supplement to whatever exemption statutes were applicable.

The final version of § 522 was the result of a compromise between the House and Senate bills. The dual system of exemptions survived from the House bill. The state's prerogative to "opt out" was derived from the deference to states' rights that was central to the Senate's version of subsection (b).

Compared to its two predecessors, the final version of § 522 is more like the Senate bill than the bill originally passed by the House. While it does recognize the dual exemption scheme contained in the House bill, the "opt out" provision insures, as a practical matter, that the states have the final say in the matter of what exemptions will be available to their resident debtors. If this proposition is accepted, the Senate Report on the intended operation of the lien avoidance provisions is indeed illustrative of the result intended by Congress when it enacted the final version of § 522. As mentioned above, that report indicates that subsection (f) was intended to operate independently of whatever exemptions were made applicable by subsection (b).

But even if one does not accept the proposition referred to above, it still stands to reason that subsection (f) was intended to be supplemental and not subservient to the exemptions made applicable by subsection (b). The committee reports of both houses of Congress support the finding of the above described result. It seems illogical to conclude that the synthesis of these two bills would yield a totally opposite result, regardless of whatever changes were made in subsection (b) of the statute.

## V.

### Rules of Statutory Construction

■ As mentioned in Section III, *supra,* this Court concludes that the analysis employed in the *Pine/Giles* decision runs contrary to firmly established rules of statutory construction. The most fundamental rule of statutory construction is to give effect to the intention of the legislature. Over the years, the courts have developed some basic maxims to aid in the discerning of that intent. The result reached by the Sixth Circuit in the *Pine/Giles* case seems to run afoul of the rules of statutory construction.

### A.

■ It should not be presumed that Congress enacted a useless or redundant statute. In accordance with this proposition, the courts have consistently ruled that when possible, a statute should be construed in such a way as to give effect to each part of that statute, and that constructions which would negate the operation of a portion of that statute or statutory scheme should be avoided if possible. See *F.A.A. Administrator v. Robertson,* 422 U.S. 255, 95 S.Ct. 2140, 45 L.Ed.2d 164 (1975); *Weinberger v. Hynson, Wescott & Dunning,* 412 U.S. 609, 632, 93 S.Ct. 2469, 2484, 37 L.Ed.2d 207 (1973); *Ginsberg & Sons, Inc. v. Popkin,* 285 U.S. 204, 52 S.Ct. 322, 76 L.Ed. 704 (1932); *Meade Township v. Andrus,* 695 F.2d 1006 (6th Cir.1983).

The construction given to § 522 in the *Pine/Giles* case makes § 522(f) mere sur-

plusage. A reading of the *Pine/Giles* decision discloses that, according to its analysis, § 522(f) can only be used to avoid liens on property if the applicable exemption statute allows debtors to exempt the encumbered property in spite of the encumbrance. In effect, this analysis states that subsection (f) does not give the debtor any greater rights than he would have enjoyed under the applicable exemption statutes. In short, it makes the subsection a restatement of the exemption laws made applicable by subsection (b). If this analysis is correct, then why did Congress even bother to include subsection (f)? This Court cannot conclude that Congress intended such a result. Thus, in keeping with the maxim and authorities cited above, this Court expresses its reservations about such a construction.

### B.

■ Another settled rule of statutory construction is that statutes concerning exemptions are to be construed in favor of the debtor. *Murray v. Zuke,* 408 F.2d 483 (8th Cir.1969); *Burns v. Kinzer,* 161 F.2d 806 (6th Cir.1947); *Doethlaff v. Penn Mutual Life Ins. Co.,* 117 F.2d 582 (6th Cir.1941), cert. denied 313 U.S. 579, 61 S.Ct. 1100, 85 L.Ed. 1536. See also 3 Sutherland, *Statutory Construction* (4th Ed.1972) § 69. This approach is taken because it is recognized that exemption statutes are enacted not just for the benefit of the debtor, but also for the benefit of the debtors' dependents and society as a whole. See *Matter of Perry,* 225 F.Supp. 481 (N.D.Ohio 1963). Section 522(f) is an exemption statute. Congress enacted it to allow debtors to retain property essential to the physical well being of debtors and their families. It recognized that if debtors were not allowed to retain such property, it was doubtful that they could become productive members of society, and might well become public charges. Consequently, this Court is extremely reluctant to embrace the analysis employed in the *Pine/Giles* case, not only for the reasons set out in the preceding

sections, but because it feels that this is a prime case for the application of the rule of construction set out immediately above.

### C.

■ In keeping with the rule that a court's primary task is to divine and implement the intentions of the legislature, it has been repeatedly held that a court should avoid construing a statute in such a manner as to produce a result that would be inconsistent with the underlying policy goals that prompted the enactment of the statute. *Kokoszka v. Belford,* 417 U.S. 642, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974); *First National Bank v. Walker Bank,* 385 U.S. 252, 87 S.Ct. 492, 17 L.Ed.2d 343 (1966); *Richards v. United States,* 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492 (1961); *EEOC v. Kimberly-Clark Corp.,* 511 F.2d 1352 (6th Cir.1975); *Environmental Defense Fund v. TVA,* 468 F.2d 1164 (6th Cir.1972). Furthermore, the courts have recognized that this must be done even if the language of the statute would seem to indicate a contrary result. See *Kokoszka, supra; Richards, supra; Philbrook v. Glodgett,* 421 U.S. 707, 95 S.Ct. 1893, 44 L.Ed.2d 525 (1975); *Perry v. Commerce Loan Co.,* 383 U.S. 392, 86 S.Ct. 852, 15 L.Ed.2d 827 (1966).

■ It has long been recognized that "one of the primary purposes of the Bankruptcy Act is to 'relieve the honest debtor from the weight of oppressive indebtedness and permit him to start afresh....' " *Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230, quoting *Williams v. U.S. Fidelity & Guarantee Co.,* 236 U.S. 549, 554–555, 35 S.Ct. 289, 290, 59 L.Ed. 713. The analysis used in the *Pine/Giles* case runs contrary to this goal.[17] Instead of relieving the debtor of the type of "oppressive indebtedness" referred to above, that analysis would cause him to leave the bankruptcy process in little better shape than he entered it. Surely this is not what Congress had in mind when it enacted

---

**17.** Indeed, even the Sixth Circuit seems to have recognized this. See *Pine/Giles, supra,* at 1469.

the Bankruptcy Reform Act.[18] See H.Rep. 95–595, *supra*, at 125–127, 167–173, 362; S.Rep. 95–989, *supra*, at 76.

## VI.

### Conclusion

■ In keeping with the binding precedent supplied by the Sixth Circuit Court of Appeals in the *Pine/Giles* case, this Court must regretfully deny the application for lien avoidance pending in this case.

Applying the analysis of the *Pine/Giles* decision to the case at bar, we must conclude that, in light of Ohio Revised Code § 2329.661, the lien in question does not impair any exemption to which the debtors are entitled under Ohio law.[19] Therefore, said application must be **DENIED.**

IT IS SO ORDERED.

---

**18.** While the construction of § 522 urged by this Court may seem to upset settled law in the area of exemptions, that was the result intended by Congress. Indeed, the 95th Congress, the body which enacted the 1978 Bankruptcy Code, sought to make fundamental changes in the often one-sided area of debtor-creditor relations. See Pub.L. No. 95–109, 91 Stat. 824 (1977) (Fair Debt Collection Practices Act). Hence, it is not surprising that such a result was intended. While such attempts may not be as politically attractive to the present Congress, See Senate Bill 445 and S.Rep. 98–65, *supra*, it must be remembered that the courts are to apply the law as it was enacted, not as some would like it to be changed.

**19.** Since this Court is bound to follow the precedent supplied by the *Pine/Giles* case, it does not reach the question of the validity of Ohio Revised Code § 2329.661 in light of Article VI, Clause 2, of the United States Constitution. See *Curry v. Thorp Discount, Inc.,* 11 B.R. 716 (D.C.N.D.Ohio 1981); *In re Maddox, supra,* at 762–763; and *In re Lawwell,* Case No. 1–83–02167 (Bkrtcy.S.D.Ohio 1983).