### In the Matter of Solomon David HOWARD, Sr., Debtor.

### Bankruptcy No. 92–42015.

United States Bankruptcy Court,
S.D. Georgia,
Savannah Division.

May 17, 1994.

James L. Drake, Jr., Chapter 7 Trustee, Savannah, GA, for plaintiff/movant.

Thomas M. Ramee, Savannah, GA, for defendant/respondent.

## ORDER ON MOTION FOR APPROVAL OF SETTLEMENT

LAMAR W. DAVIS, Jr., Chief Judge.

On January 26, 1994, Debtor filed his second amended Motion for Approval of Settlement setting forth that Debtor wished to settle a personal injury lawsuit for a total sum of $65,000.00. Debtor further seeks an order authorizing disbursement of the funds to permit payment of attorney's fees, expenses of litigation, payment to the Debtor and Debtor's wife of $31,500.00 based on various exemptions claimed under Georgia law, and proposed a net recovery to creditors from the settlement of $4,713.01. Numerous objections were filed to said application and a hearing was conducted on February 22, 1994. As a result of the evidence taken at that time and the argument of counsel, the Court approved the settlement of the lawsuit for the sum of $65,000.00, but reserved any ruling on the disbursement of proceeds and required that the $65,000.00 be paid to the Trustee pending final adjudication. On March 30, 1994, a continued hearing to consider the appropriate disbursements from those funds was held, and by Order dated March 30, 1994, I authorized payment of attorney's fees in the amount of $26,000.00 and expenses advanced in the amount of $2,786.99. As a result, the Trustee held the net amount of $36,213.01. Of that sum the Debtor seeks disbursement of funds pursuant to exemptions which he claims as follows:

| | |
|---|---|
| O.C.G.A. § 44–13–100(a)(6) | $ 5,000.00 |
| O.C.G.A. § 44–13–100(a)(11)(D) | $ 7,500.00 |
| O.C.G.A. § 44–13–100(a)(11)(E) | $15,000.00 |
| O.C.G.A. § 44–13–100(a)(6) | $ 4,000.00 |

(the consortium claim of his wife Jennifer Howard—a debtor in case # 93–40729)

All objections to the proposed distribution have been resolved with the exception of that of the Trustee. An objection to the proposed settlement was filed by the Gulfstream Aerospace Employee Benefit plan which alleged a right of subrogation for employee health benefits paid on behalf of Mr. Howard as a result of his wife's employment at Gulfstream in the amount of $12,544.21. That objection was settled upon agreement by the Trustee and Gulfstream that of the funds on hand the sum of $5,000.00 would be remitted to Gulfstream in full settlement of its subrogation claim. As a result, if the remaining claims of exemption of Mr. Howard in the amount of $31,500.00 are granted over objection, no monies will be distributed to unsecured creditors in this case. In support of the claim of exemption and in response to the objections thereto which were filed, Debtor filed a response detailing the nature of the personal injury action, the contentions of the parties, and attempted to set forth the considerations which entered into the decision of the parties to settle the case for the sum of $65,000.00. Attached as tab "6" to the Debtor's composite response filed on February 22, 1994, is the affidavit of Dennis Mullis, Esquire, an attorney at law who represented the liability insurer of the defendant in the lawsuit which is the subject of the settlement. The Mullis affidavit asserts that in recommending this settlement to his client, he evaluated his client's exposure for various elements of damages available under Georgia law as follows:

| | |
|---|---|
| Jennifer Howards' Consortium Claim | $ 4,000.00 |
| Lost wages incurred prior to trial | $21,350.00 |
| Future Lost Wages | $18,300.00 |
| Pain and Suffering | $15,250.00 |
| Out-of-pocket Medical Expenses | $ 3,050.00 |
| Subrogation Claim of Howards' Health Insurer | $ 3,050.00 |
| | |
| TOTAL | $65,000.00 |

An issue was raised as to whether Mr. Mullis' affidavit should be binding on the Court's inquiry in assessing the various claims of exemption. However, no evidence was introduced to suggest that the Mullis affidavit was not relevant to the Court's inquiry or that it should be disregarded in its entirety as being self-serving or otherwise infirm. Accordingly, because there was no contrary evidence introduced to suggest how the settlement value was reached and because, obviously, the case was not decided by a jury on a special verdict which would guide the Court in making its determination, I conclude that the settlement factors set forth in the Mullis affidavit constitute a relevant factual basis on which I can evaluate Debtor's Motion.

Based upon Debtor's testimony at the hearing, I find that his current gross income is approximately $450.00 per week, that Debtor's wife is earning approximately $1,129.00 per month, net, and as a result, the family's total monthly income after taxes is approximately $2,741.00. At the time of the filing of this case, Debtor's budget revealed $2,888.00 in monthly expenses. However, Debtor's housing costs are now reduced by approximately $600.00 resulting in a net monthly expense for support of the family of $2,288.00. Debtor testified that he is attempting to get his contracting business restarted but a lack of credit arising out of his bankruptcy filing hampers his ability to do so. He also stated that he hoped to be able to find work as a construction supervisor for another company as a way of enhancing his current level of income.

I concluded, in the absence of any objection to the consortium claim of Jennifer Howard, that $4,000.00 attributable to her consortium claim should be allowed inasmuch as she has claimed it in her companion bankruptcy, case number 93–40729, pursuant to O.C.G.A. Section 44–13–100(a)(6). Solomon David Howard's separate $5,000.00 claim of exemption pursuant to O.C.G.A. Section 44–13–100(a)(6) was not objected to by any party in interest and I concluded it was likewise allowable. Therefore, on April 29, 1994, I entered an Interim Order authorizing the disbursement of the Section 44–13–100(a)(6) exemptions to Mr. and Mrs. Howard in the total amount of $9,000.00 since no party had objected to these claims of exemption. Thus, the Trustee holds a net $27,213.01 subject to the remaining claims of exemption.

The principal dispute in this case arises out of his claims of exemption under O.C.G.A. Section 44–13–100(a)(11)(D) and (E) which provide in relevant part as follows:

(a) In lieu of the exemption provided in Code Section 44–13–1, any debtor who is a natural person may exempt, pursuant to this article, for purposes of bankruptcy, the following property:

(11) The debtor's right to receive, or property that is traceable to:

(D) A payment not to exceed $7,500.00 on account of personal bodily injury, not including pain and suffering or compensation for actual pecuniary loss, of the debtor or an individual of whom the debtor is a dependent; or

(E) A payment in compensation of loss of future earnings of the debtor or an individual of whom the debtor is or was a dependent to the extent reasonably necessary for the support of the debtor and any dependent of the debtor.

O.C.G.A. § 44–13–100(a)(11)(D) and (E).

With respect to the $7,500.00 exemption under subparagraph (D) it is important to note exactly what the statute allows. The exemption is limited to $7,500.00 and it must be on account of personal bodily injury, excluding pain and suffering or compensation

for actual pecuniary loss. Courts interpreting this section have held that the $7,500.00 personal bodily injury section does not include medical expenses or loss of earnings, past or future, but does include loss of use of a limb or a part of the body to the extent that the evidence supports such a recovery. *See e.g. In re Geis,* 66 B.R. 563, 564 (Bankr. N.D.Ga.1986). In this case the only evidence of any permanent bodily injury was a statement by one of Debtor's attending physicians, Dr. Russell D. Fagan, Jr., who testified on deposition on August 4, 1993 (*See* tab "3" of Defendant's composite response). On page 31 of that deposition he rated the Debtor as having a five percent permanent impairment of his shoulder. There was no other evidence of any actual bodily injury, and the Mullis affidavit allocated none of the settlement proceeds to actual bodily injury other than medical expenses, pain and suffering, or past and future earnings.

■ Following the continued hearing in this case, Debtor's counsel argued on brief that the five percent impairment to the Debtor's shoulder, in fact, has a demonstrable monetary value. He argued that under the Georgia Workers' Compensation Act, for instance, a five percent permanent impairment to the body as a whole, would entitle the recipient to fifteen weeks of benefits totalling $3,750.00. Further, under the Federal Longshoremens' and Harbor Workers' Compensation Act, a five percent permanent impairment to the body as a whole would entitle the injured worker to 15.6 weeks of compensation in an amount of two-thirds of his earnings at the time of the injury which would amount to $12,467.52. While the measure of damages under either of the Acts is not controlling on this Court, the range suggested indicates that an allowance of $7,500.00 for Debtor's actual bodily injury is not unreasonable. Despite the fact that the impairment rating of the physician was to the Debtor's shoulder and not to the body as a whole, both the Workers' Compensation Act and Longshoremens' and Harbor Workers' Compensation Act are in the nature of strict liability statutes and thus compensation is generally pegged at a figure lower than that which might be awarded under a negligence theory of recovery. Thus, it would appear

that Debtor is entitled to exempt $7,500.00 of the settlement under Section 44–13–100(a)(11)(D) unless the Mullis affidavit requires a different result. *See In re Haga,* 48 B.R. 492 (Bankr.E.D.Tenn.1985).

The Mullis affidavit did not specify that any portion of the settlement was being paid on account of actual bodily injury. Nevertheless, I conclude that, while the Mullis affidavit is relevant, it is not dispositive on this issue. I find in the bankruptcy context that the Debtor's actual bodily injury and resultant disability are sufficiently extensive to account for at least $7,500.00 of the settlement. Even though defense counsel may have measured this injury solely in terms of lost wages, or pain and suffering, nevertheless there was actual bodily injury within the meaning of the exemption. Clearly, Debtor suffered a five percent permanent impairment of his shoulder as a result of the injuries. For someone who is employed in the construction business, the permanent impairment of a bodily member which is essential in the performance of his duties in order to maximize his income is surely a compensable event in a tort case. While defense counsel may have characterized all of this element of the settlement to be in compensation of lost earnings, or pain and suffering, the permanent impairment to the shoulder also constitutes an actual permanent injury to a body member. Because exemptions are to be construed liberally in order to afford debtors a new start, I conclude that, in reality, a portion of this settlement must be considered allocable to Debtor's actual bodily injury and exemptible under subsection (D). *See In re Law,* 37 B.R. 501, 511 (Bankr.S.D.Ohio 1984). Having previously concluded that $7,500.00 in compensation for the permanent bodily injury as sustained by Mr. Howard is not unreasonable, I decline to disallow that exemption simply because personal bodily injury was not expressly mentioned in the Mullis affidavit. *In re Territo,* 36 B.R. 667, 670 (Bankr. E.D.N.Y.1984) ("Debtor suffered an injury to his back that resulted in prolonged hospitalization and rehabilitation necessitated by chronic, limited movement . . . this injury was ruled to fit the limited definition of personal injury. In the absence of specific allo-

cation as to the amount of the settlement, an exemption was sustainable when a debtor who earned $12,000 per year prior to his injury was unable to return to work and was subsisting on Supplement Security Income.")

■ The Debtor further claims entitlement to $15,000.00 in loss of future earnings under O.C.G.A. Section 44–13–100(a)(11)(E). In this regard the claim of exemption is supported by the Mullis affidavit which assessed the settlement value of the case at $18,300.00 for the element attributable to loss of future earnings.[1] The provisions of subparagraph (E) clearly authorize the Debtor to exempt, for the purposes of bankruptcy, a payment in compensation of loss of future earnings, subject, however, to the limitation that the payment be "to the extent reasonably necessary for the support of the debtor and any dependent of the debtor." Although there is sufficient evidence to conclude that $18,300.00 of the settlement, an amount in excess of the claimed exemption, was a payment in compensation of loss of future earnings, I nevertheless conclude that the Debtor's exemption of this sum must be disallowed because Trustee has carried his burden in proving that the exemption is not "reasonably necessary" for the support of the Debtor or a dependent of the Debtor.[2] Based on the testimony, Debtor's current family income exceeds current expenses by approximately $500.00 per month. Inasmuch as the Debtor's prospects for the future suggest that, if anything, his income is likely to increase and because, as of the time of the settlement and the administration of the claim of exemption, there is no showing that the Debtor or a dependent of the Debtor are dependent on this exemption to provide for their support,[3] I sustain the Trustee's objection to the exemption of $15,000.00 under 44–13–100(a)(11)(E).[4]

Accordingly, the Trustee is authorized and directed to remit to Solomon David Howard, Sr., the sum of $7,500.00 in payment of his claim under O.C.G.A. Section 44–13–100(a)(11)(D). The remainder of the funds held by the Trustee shall be administered for the benefit of creditors of the estate.

1. The Mullis affidavit also attributes $21,350.00 to lost past wages. It should be noted that the Debtor was apparently also compensated for lost wages by virtue of a disability income policy which he held at the time of his injury under which he received approximately $21,000.00 during the period of his disability and prior to his return to work.

2. See Fed.R.Bankr.P. 4003(c).

3. See e.g., In re Russell, 148 B.R. 564, 567 (Bankr.E.D.Ark.1992) (Trustee sustained burden of proving compensation not "reasonably necessary for the support of the debtor" where debtor was capable of working and schedules revealed debtor's income exceeded expenses). Cf. In re Cramer, 130 B.R. 193, 194–96 (Bankr.E.D.Pa. 1991) (Trustee failed to meet burden under Rule 4003(c) of showing award not reasonably necessary for debtor's support where debtor's poor health after accident prevented him from working and debtor had significant medical bills).

4. Because of the ruling herein it is not necessary for me to consider whether, because of the conjunctive "or" between subsections (D) and (E), a debtor is required to elect between rather than stack the debtor's exemptions under these two provisions. While it seems to be common practice that debtors are permitted to claim both exemptions, the use of the term "or" at least raises an inference that an election might be required as between those two subsections. See In re Russell, 148 B.R. 564, 566 (Bankr.E.D.Ark. 1992) However, as already indicated, a ruling on that point is not called for by virtue of the disallowance of the (a)(11)(E) exemption, supra.